UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEXANDRIA JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: 08-620 (CKK) |
| | : | |
| JANICE QUINTANA, *et al.,* | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS DISTRICT OF COLUMBIA AND JANICE QUINTANA'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants District of Columbia ("District") and Janice Quintana, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves this Honorable Court for an order dismissing Plaintiff's Complaint because:

1. Plaintiff lawsuit against Defendant Janice Quintana is an official-capacity suit. Dismissal is appropriate since the District of Columbia is already a party defendant and plaintiff must look to the District for her relief;

2. Plaintiff has failed to properly plead a claim for violation of her First Amendment Rights pursuant to 42 U.S.C. § 1983, as she failed to speak out as a private citizen on a matter of public concern;

3. Defendant Quintana is entitled to qualified immunity pursuant to 42 U.S.C. § 1983;

4. Plaintiff has failed to show municipal liability under 42 U.S.C. § 1983;

5. There is no individual liability under the Whistleblower Act, and plaintiff cannot maintain her claim against defendant Quintana;

6. Plaintiff failed to make protected disclosures under the Whistleblower Act for which she is entitled to relief;

7. The Comprehensive Merit Protection Act bars plaintiff's worker's compensation claim against these defendants; and

8. Plaintiff has failed to exhaust her administrative remedies with respect to her worker's compensation claim.

A Memorandum of Points and Authorities in support of this Motion, along with a proposed Order, is attached hereto and incorporated herein by reference. Because this is a dispositive motion, Defendants are not required to confer with other parties per LCvR 7(m).

> Respectfully Submitted,
>
> PETER J. NICKLES
> Interim Attorney General for the District of Columbia
>
> GEORGE C. VALENTINE
> Deputy Attorney General, Civil Litigation Division
>
> _____/s/_____
> PATRICIA A. JONES [428132]
> Chief, General Litigation Sec. IV
>
>
> \_\_\_/s/ Dwayne C. Jefferson_____
> DWAYNE C. JEFFERSON [980813]
> Assistant Attorney General
> One Judiciary Square
> 441 4th St., N.W., 6th Floor South
> Washington, D.C. 20001
> (202) 724-6649; (202) 727-6295; (202) 741-0554 fax
> dwayne.jefferson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEXANDRIA JONES, | : | |
| Plaintiff, | : : : | |
| v. | : : | C.A. No.: 08-620 (CKK) |
| JANICE QUINTANA, *et al.,* | : : | |
| Defendants. | : : | |

**MEMORANDUM AND POINTS OF AUTHORITIES SUPPORTING
DEFENDANTS' MOTIONS TO DISMISS**

In support of their dispositive motions, Defendants District of Columbia ("District") and Janice Quintana herein submit their memorandum of points and authorities.

**I.      STATEMENT OF FACTS**

In her Complaint, Alexandria Jones alleges that she was hired into the Office of Unified Communications ("OUC") as a receipt clerk in August 1998. After six months, she was promoted to "dispatcher," such that her primary duty was to assist citizens when they make emergency 911 calls. *See* Complaint at ¶¶ 7 & 8. Plaintiff claims that non-emergency 311 calls are routed to untrained/uncertified operators who lack proper computer equipment to assist citizens. *Id*. at ¶ 9

In 2007, upon learning of an OUC proposal to transfer 311 calls back onto the 911 line, Plaintiff claims that she became concerned that this proposal would pose a substantial and specific danger to public health and safety because it would put more calls in queue and, otherwise, delay emergency dispatch service. *Id*. at ¶ 10. According to Plaintiff, between December 14, 2007 and January 24, 2008, she voiced opposition to the

OUC proposal by engaging in four categories of very specific acts — (1) sending e-mails to District Council members; (2) sending e-mails to Mayor Adrian Fenty; (3) testifying before the City Council; and (4) interviewing with a local news channel.  *Id*. at ¶¶ 12, 13, 14, 15, 19 & 27.

On April 10, 2008, Plaintiff filed a Complaint naming the District of Columbia and OUC Director Janice Quintana as parties-defendant.  Jones claims that — because she complained to public officials and the media — Defendants violated the Whistleblower Protection Act ("WPA") by placing her on administrative leave on January 10, 2008 (Count I); violated D.C. Official Code § 32-1542 in retaliation for the worker's compensation claim she filed (Count II); and impinged free speech rights guaranteed her by the First Amendment to the U.S. Constitution in violation of § 1983 of the Civil Rights Act (Count III).  Among other forms of relief, Plaintiff asks this Court to grant punitive damages of not less than $1 million.  *Id*. at ¶ 69.  For the reasons set forth below, Defendants are entitled to a dismissal of the Complaint.

## STANDARD OF REVIEW

### II.   MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate when a moving party has failed to set forth a claim for which s/he is entitled to relief.  The Supreme Court has held that the proper test for the sufficiency of a pleading is whether the claim the Complaint purports to set forth is "plausible."  *See Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1966 (2007).  The determination of whether a dismissal is proper must be made on the face of the pleadings alone.  *See Telecommunications of Key West, Inc., v. United States,* 757 F.2d 1330, 1335 (D.C. Cir. 1985).

In order to survive a motion to dismiss, a plaintiff's complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964-65. "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966.

### ARGUMENT

**III. PLAINTIFF HAS FAILED TO STATE A CONSTITUTIONAL CLAIM PURSUANT TO 42 U.S.C. § 1983 AGAINST THESE DEFENDANTS FOR WHICH SHE IS ENTITLED TO RELIEF.**

    A.    PLAINTIFF'S OFFICIAL-CAPACITY LAWSUIT AGAINST DEFENDANT QUINTANA MUST BE DISMISSED.

The lawsuit against Janice Quintana, Director, Office of United Communication, is an official capacity lawsuit. See Complaint at ¶ 2 ("**At all times relevant to this cause of action Janice Quintana was acting in her official capacity as Director, Office of Unified Communications, D.C.**") (emphasis added). Government officials sued in their official capacities are not personally liable for damages. Instead, a plaintiff must look to the municipality. *See Atchinson v. District of Columbia,* 73 F.3d 418, 424 (D.C. 1996)( citing *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Courts have routinely dismissed corresponding claims against individuals named in their official capacity as "redundant and an inefficient use of judicial resources." *Robinson v. District of Columbia,* 403 F. Supp. 2d 39, 49 (D.D.C. 2005). The U.S. Supreme Court has ruled upon the issue of official-capacity suits — holding that:

> official-capacity suits…"[g]enerally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to

> respond, an official-capacity suit, is in all respects other than name, to be treated as a suit against the entity. …The real party in interest is the entity. Thus, …a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham,* 473 U.S. 159 (1985); s*ee also, Fields v. District of Columbia Dep't of Corrections,* 789 F. Supp 20 (D.D.C. 1992).

In this case, Defendant Quintana's presence would be duplicative as she is being named in her official capacity only, and the District is already a party defendant. Moreover, an application of the established case law in the District clearly demonstrates that Plaintiff is not entitled to duplicative recovery and must look to the District for any requested relief. Accordingly, Defendant Quintana is entitled to dismissal.

    B.    PLAINTIFF HAS FAILED TO SET FORTH SUFFICIENT FACTS TO OVERCOME DISMISSAL OF HER FIRST AMENDMENT CLAIM AGAINST THESE DEFENDANTS.

Plaintiff's Complaint should be denied concerning her First Amendment claim because she has failed to plead sufficient facts to support her claim against these defendants. Plaintiff failed to plead that she spoke as a private citizen, an element necessary to establish her First Amendment claim. *See Garcetti v. Ceballos*, 126 S.Ct. 1951, 1958 (2006) (holding that the first inquiry in a First Amendment analysis is whether the plaintiff was speaking as a citizen). Instead, based on the allegations in her complaint, Plaintiff spoke out as a government employee during the course of her employment. See Complaint, generally.

A public employee's cause of action for retaliation in violation of the First Amendment requires proof of four elements: (1) the public employee **must have spoken as a citizen** on a matter of public concern; (2) that the employee's First Amendment interest is not outweighed by the governmental interest of promoting the efficiency of the

public service performed through its employees; (3) that the employee's speech was a substantial or motivating factor for the denial of a right or benefit; and (4) that the government would not have reached the same decision absent the protected conduct in which the employee engaged. *See Garcetti v. Ceballos*, 126 S.Ct. at 1958. *See also, Leonard v. D.C.,* 794 A.2d 618 (D.C. 2002). The Supreme Court, in *Garcetti,* held that the public employee **must have spoken as a citizen** on a matter of public concern. *Garcetti*, 547 126 S.Ct. at 1958. *Garcetti* involved a state deputy attorney who was reassigned and denied a promotion after he wrote a memo to his supervisors about inaccuracies in an affidavit used to procure a search warrant. The Supreme Court held that when the plaintiff wrote his memo and had later discussions with his supervisors concerning the inaccuracies of the search warrant, he did not speak as a citizen, but spoke as a government employee. The Court found that "when he went to work and performed the task he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance." *Id.* at 1960. The Court found that because plaintiff's speech was pursuant to his official duties, he was not acting as a private citizen and did not enjoy First Amendment protection.

    *Garcetti* and its progeny instruct that in cases where a government employee's speech falls within the scope of the employee's employment responsibilities, there is no First Amendment protection. The Court of Appeals held in *Wilburn v. DC*, 2007 U.S. LEXIS 6397 (March 20, 2007), that the plaintiff, the former interim Director of the Office of Human Rights, had no First Amendment protection when she complained of racism and sexism to the Department of Personnel, a Deputy Mayor, and the Mayor's

Chief of Staff concerning the Department of Personnel's rejection of her salary recommendations for two (2) African American females. According to the Court, the plaintiff had no First Amendment protection because her speech was made in the context of her employment as interim Director of the Office of Human Rights, where her "official position description included identifying and eliminating discriminatory practices in employment." *Id*. at *29. In other jurisdictions, the Courts of Appeals have similarly held that a public employee enjoys no First Amendment Protection when the speech is made in the course of their employment responsibilities. *See Hill v. Bourough of Kutztown* 455 F.3d 225, 242 (3d Cir. 2006)(holding that a public employee enjoys no First Amendment Protection when employee reported harassment to Bourough Council when he had a duty as a Manager to report complaints). *See Mills v. Evansville,* 452 F.3d 646, 648 (7th Cir. 1006)(holding that that an officer had no First Amendment protection for her speech when it was made while she was on duty, and in uniform, and the speech was made to her superiors contributing to the formation and execution of official policy). *See Green v. Bd of County Comm'rs,* 472 F.3d 794, 2007 U.S. App. Lexis 1 (10th Cir. 2007)(holding that a drug lab employee who ignored her supervisors and scheduled confirmatory drug tests she suspected were faulty was not protected by the First Amendment, even though her conduct was condemned by her supervisors and not explicitly required in her day to day activities, because her acts were generally the type of activities that she was paid to do.)

In *Thompson v. District of Columbia*, 2007 U.S. Dist. Lexis 19500 *7-8 (D.D.C. March 20, 2007), the Court held that a government employee's speech was not protected by the First Amendment when it occurred in the course of plaintiff's official duties as an

auditory and security officer. According to the Court, "even if the speech was outside the bounds of the plaintiff's job description, his speech was as a government employee and related to his professional responsibilities."

In this case, Plaintiff avers that she was hired in August 1998, as a receipt clerk within the Metropolitan Police Department. See Complaint, at ¶ 7. Six months after she began employment, she was promoted to a dispatcher. "One of her duties as dispatcher was to assist citizens when they called 911." See Complaint, at ¶ 8. According to plaintiff, "the 311 telephone non-emergency police calls were routed to untrained/uncertified operations also without proper computer equipment to properly assist the citizens." Complaint, ¶ 9. Plaintiff avers that she learned that Defendant Quintana had proposed changes to the system and that the 311 calls would be routed back to the 911 line. Complaint, at ¶ 10. Plaintiff avers that although Defendant Quintana represented to the City Council that she had sufficient staff to handle the 911 calls, this would not the fact. Plaintiff avers that Defendant Quintana "would get supervisors and overtime personnel to assist on the phone when the Mayor or media was present at the office." Complaint, at ¶ 12. Plaintiff avers that she asked to be allowed to attend the oversight hearing to express her concerns, but was not allowed to do so. Complaint, ¶ 12. Therefore, on December 17, 2007, she sent emails to Vincent Grey, Chairman of the D.C. City Council, and council members David Canatania and Yvette Alexander expressing her concerns. Complaint, ¶ 13. On December 28, 2008, Plaintiff claims she sent an email to Mayor Adrian Fenty to express her concerns to him about the proposed change of 311/911. Complaint, ¶ 14. Plaintiff avers that on January 1, 2008, she sent an email to Mayor Fenty asking to meet with him to discuss her concerns. Complaint, at ¶ 15.

Plaintiff further avers that when Mayor Fenty visited OCU on January 7, 2008, she attempted to have a conversation with him. Complaint, at ¶ 16. Plaintiff avers that on January 10, 2008, Defendant Quintana placed on her administrative leave because "the Mayor was not pleased with her." Complaint, ¶ 17.

On January 11, 2008, Plaintiff avers that she told her floor manager that she was suffering mental anguish from being wrongfully placed on leave and asked for a claim number so she could file a worker's compensation claim. Complaint, ¶ 18. That same day, Plaintiff avers she spoke with the media and voiced her concerns about the proposed change in the 911 emergency number. Complaint, at ¶ 19. Plaintiff avers that on January 18, 2008, she was served with a 30 day proposed suspension. Complaint, at ¶ 24. Plaintiff testified before the City Council on January 24, 2008, after the issuance of the proposed suspension. Complaint, at ¶ 27. Plaintiff avers that on February 11, 2008, the proposed suspension was not upheld, and the charges were dismissed. Complaint, at ¶ 31.

By Plaintiff's own averments, it is clear that she was not speaking out as a private citizen when she voiced her concerns about the proposed change to the 911 system by routing 311 calls to that system, but an employee who would have had to handle the additional calls. See Complaint, generally. Additionally, when she emailed the Mayor and City Council and spoke before the City Council, it is evident that she was again speaking as a government employee, not a private citizen. At all times during the course of her speech, Plaintiff was a government employee who was charged with handling 911 and/or 311 calls. Like the governmental speech discussed in *Mills*, 452 F.3d at 648, Plaintiff's speech was made in the course of her duties and not as a private citizen, and her

communications enjoy no First Amendment protection. Therefore, Plaintiff's Complaint must be dismissed because based on her own averments, she has failed to plead a prima facie claim for First Amendment protection.

    C.    PLAINTIFF HAS FAILED TO PROPERLY PLEAD MUNICIPAL LIABILITY

To hold a municipality liable under 42 USC § 1983, a plaintiff must show that the municipality's customs, practices, and/or policies were the moving force behind the alleged constitutional violation. *See Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978), holding municipal liability is restricted to cases in which "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." The Supreme Court determined that:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983."

*Monell,* 436 U.S. at 694.

The Supreme Court further held in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985), that, "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." The *Oklahoma City* decision interpreted *Monell* as holding that "municipal liability should not be imposed *when the municipality was not itself at fault*." *Id.* at 818 (emphasis added). Plaintiff has failed sufficient facts to plead that the violation of her constitutional rights resulted from a District custom, practice and/or policy. *See* Complaint, generally. As such, the District is entitled to dismissal of her claim filed pursuant to 42 U.S.C. § 1983, against it.

    D.      DEFENDANT QUINTANA IS ENTITLED TO QUALIFIED IMMUNITY FOR HER COMPLAINED ABOUT CONDUCT.

It is well-settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them.  *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002).  Qualified immunity protects governmental employees against insubstantial lawsuits which, the Supreme Court has noted, lead to several societal costs, such as the expense of litigation, diversion of official energy from pressing public issues, deterrence of able citizens from acceptance of public office, and the possibility that the fear of being sued will dampen the ardor of all but the most resolute individuals.  *Harlow v. Fitzgerald*, 457 U.S. 800, 8l4 (l982).

In an action for damages against a government official under 42 U.S.C. § 1983, the official is protected by qualified immunity if his/her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *IAC v. United States*, 365 F.3d at 24, quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  The Supreme Court has instructed courts to follow a two-step inquiry in determining whether an official is entitled to qualified immunity in a particular case. *Brosseau v. Haugen*, 543 U.S. 194 (2004); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The threshold question is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. at 201.  If, assuming the truth of the plaintiff's facts, there was no constitutional violation, then the defendant official is entitled to judgment and there is no necessity for further inquiry concerning qualified immunity.  *Id*.  If the court finds a violation of a constitutional right (based on the assumed facts), the next question is

whether that right was clearly established at the time of the incident. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau*, 543 U.S. at 199, quoting *Saucier*, 533 U.S. at 201. The reasonableness of the officer's conduct should be judged from the officer's perspective on the scene of the incident. *Saucier*, 533 U.S. at 205. The Supreme Court has "cautioned against the '20/20 vision of hindsight' in favor of deference to the judgment of reasonable officers on the scene." *Id.*, quoting *Graham v. Conner*, 490 U.S. 386, 393, 396 (1989).

In determining whether a constitutional right has been clearly established, "'courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning.'" *IAC*, 365 F.3d at 25, quoting *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001). For example, in a First Amendment case, it is not sufficient for a plaintiff to allege that his right to free speech was violated and that such a right was clearly established more than 200 years ago. *Id*. at 25. "Instead, courts must 'define the right to a degree that would allow officials reasonably [to] anticipate when their conduct may give rise to liability for damages . . . .'" *Id*. at 25, quoting *Butera*, 235 F.3d at 646 (quoting *Anderson*, 483 U.S. at 639) (brackets added in *Butera*)).

Plaintiff, a District government employee, was promoted by the District to a dispatcher position charged with the responsibility of handling 911 calls. "One of her duties as dispatcher was to assist citizens when they called 911." See Complaint, at ¶ 8. According to plaintiff, "the 311 telephone non-emergency police calls were routed to untrained/uncertified operations also without proper computer equipment to properly

assist the citizens." Complaint, ¶ 9. Plaintiff avers that Defendant Quintana proposed to reroute those 311s that were being transferred to the untrained/uncertified operators to the more skilled 911 operators. Complaint, ¶ 10. Because Plaintiff believed that allegedly believed that the 911 operators would be overburdened with the additional calls, she allegedly sent an email to various council members, and complained directly to Mayor Fenty. Complaint, ¶¶ 12 through 15. There are no allegations in the Complaint that Plaintiff expressed her concerns either to her direct supervisor or to Defendant Quintana. See Complaint, generally. Defendant Quintana, as Director for the agency where Plaintiff is employed, had a good faith belief that she could propose discipline on Plaintiff for her decision to go outside her chain of command in an attempt to undermine this defendant's proposed changes to the 911 system. By Plaintiff's own averments, the 311 calls were being transferred to staff who were not prepared to respond to those calls. The Director's decision to propose plans which would ensure that the 311s calls were adequately addressed, and was within her discretionary authority. Any other manager or Director of an agency would have believed that their conduct did not violate their subordinates' constitutional rights. Based on the allegations as set forth in the Complaint, Defendant Quintana is entitled to qualified immunity. Qualified immunity thus protects all but the plainly incompetent or those who knowingly violate the law. *District of Columbia v. Evans*, 644 A.2d l008, l0l5 (D.C. 1994). Defendant Quintana is not incompetent and did not knowingly violate the law.

    E.    PLAINTIFF MAY NOT MAINTAIN HER WHISTLEBLOWER PROTECTION ACT CLAIM AGAINST DEFENDANT QUINTANA.

Plaintiff seeks to hold Defendant Quintana liable under the D.C. Whistleblower Act, D.C. Official Code § 1-615.51, *et seq*. However, there is no individual liability

under the Whistleblower Protection Act. *See Crawford v. District of Columbia,* 891 A.2d 216 (D.C. 2006). The legislature did not create a private right of action against supervisors when the Whistleblower Protection Act was created. *See Williams v. Johnson, et al.,* C.A. No. 06-2076, at 10-11, filed in the United States District Court for the District of Columbia.

While the Act provides that supervisors found in violation of the Act are subject to discipline, including dismissal from employment, or civil fines, it does not allow an individual to be a party defendant in the civil action. *See* D.C. Official § 1-615.55. Disciplinary actions are meted out by employers, not the Court. Because there is no private cause of action against individuals under the Whistleblower Protection Act, Plaintiff's claim against Defendant Quintana must be dismissed.

F. PLAINTIFF MAY NOT MAINTAIN HER CLAIM AGAINST THE DISTRICT UNDER THE WHISTLEBLOWER ACT.

Under the Whistleblower Protection Act, Plaintiff must set forth facts in her Complaint to show that she was retaliated against *because* of her protected disclosures. *See* D.C. Official Code § 1-615.53; *see also Johnson v. District of Columbia*, 935 A.2d 1113, 1117 (D.C. 2007); *Crawford v. District of Columbia*, 891 A.2d 216 (D.C. 2006). Plaintiff does not allege that Defendant Quintana had knowledge of her alleged protective disclosures prior to the single disciplinary (i.e., retaliatory) action upon which it rests — the agency's January 9th decision to place Plaintiff on administrative leave with pay. See Complaint, generally. In fact, Plaintiff avers that she emailed the Council members and the Mayor about her concerns about Director Quintana's proposed changes to the 911 system, but does not allege how or when Defendant Quintana allegedly learned about her disclosures. Complaint, at ¶¶ 13 through 16.

According to the Council, "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal. *See* D.C. Official Code § 1-615.51. The Act defines the term "protected disclosure" as "any disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee **reasonably believes** evidences "gross mismanagement, gross misuse or waste of public resources or funds, abuse of authority in connection with the administration of a public program or the execution of a public contract, a violation of a federal, state, or local law, rule or regulation, or of a term of a contract between the District government and a District government contractor which is not of a merely technical or minimal nature; or a substantial and specific danger to the public health and safety." D.C. Official Code § 1-615.52(6), emphasis added. Under the Whistleblower Protection Act, the following constitute protected disclosures:

(A) Gross mismanagement;

(B) Gross misuse or waste of public resources or funds;

(C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;

(D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which is not a merely technical or minimal nature, or

(E) A substantial and specific danger to the public health and safety.

According to Plaintiff, 311s were once routed to employees who were untrained/uncertified to handle such calls.  As a result, Defendant Quintana proposed changes to the system to reroute those calls to 911 operators to handle.  Because Plaintiff believed that the 911 operators would be overburdened, Plaintiff disclosed her concerns to the City Council, to the Mayor and to the media.  See Complaint, generally.  However, Plaintiff's claimed disclosures are not enumerated in § 1-615.52(6), and enjoy no protection under the Act.  Plaintiff has failed to include any factual support to show that Defendant Quintana's decision to reroute calls to more trained staff is evidence of gross mismanagement, gross misuse or waste of public resources or funds, or any other factor set forth in the statute.  *See Zirlkle v. District of Columbia*, 830 A.2d 1250 (D.C. 2003), holding that "employee's belief that his employer's new policy regarding taxpayer appeals was illegal did not meet the reasonable belief standard under the Whistleblower Protection Act, and thus, his belief did not protect his act of disclosing the allegedly "illegal" conduct; employer's new policy was clearly a proper exercise of discretion, and was consistent with employer's previous "five o'clock rule allowing a taxpayer the option to withdraw his appeal on the day of the hearing."  In this case, 311 calls were once handled by 911 operators. Those calls were thereafter transferred to employees who Plaintiff claims were untrained to perform the job.  Defendant Quintana decision to reroute those call to more experienced operators was the exercise of her discretion and plaintiff's alleged protected disclosures do not meet the standard under the Whistleblower Act.  Therefore, dismissal of that claim is appropriate.

G.     PLAINTIFF FAILS TO STATE A CLAIM FOR WORKER'S COMPENSATION RETALIATION IN VIOLATION OF D.C. OFFICIAL CODE § 32-1542.

1. Plaintiff's Exclusive Relief is Under the Comprehensive Merit Protection Act.

Plaintiff avers that these Defendants violated D.C. Official Code § 32-1542 by retaliating against her when she tried to file a worker's compensation claim. *See* Complaint at ¶¶ 54 through 62. However, § 32-1542 does not apply to Plaintiff, a District government employee. *See* D.C. Official Code § 32-1501(9)(B), which provides defines the term "employee" to exclude "employee[s] subject to the provisions of subchapter XXIII of Chapter 6 of Title 1." Subchapter XXIII of Chapter 6 of Title 1 establishes a worker's compensation scheme for District employees. *See* §§ 1-623.01, *et seq*. *See also Heasley v. District of Columbia Gen. Hosp.*, 180 F.Supp. 2d 158 (D.D.C. 2002). Though § 32-1542 prohibits employers and their agents from discharging employees for pursuing worker's compensation claims, the statute expressly excludes District government employees from coverage. Plaintiff's exclusive remedy for her work-related claim is under the Comprehensive Merit Protection Act. As such, this Court lacks jurisdiction over Plaintiff's worker's compensation claim. *See White v. District of Columbia,* 852 A.2d 922 (D.C. 2004), holding that when a claim is cognizable under the CMPS, that statute provides the complainant with his or her exclusive remedy, and suits in tort are generally preempted.

2. Plaintiff's Failure to Exhaust Her Administrative Remedies Precludes Her Ability to Pursue Her Claim.

Not only does this Court not have jurisdiction over this case because the CMPA provides Plaintiff with her exclusive remedy, Plaintiff failed to administratively exhaust her remedies. Plaintiff conceded in her Complaint that she did not exhaust her

administrative remedies.  *See* Complaint at ¶ 47; *see also Nolting v. National Capital Group, Inc.,* 621 A.2d 1387 (D.C. 1993) (holding an employee who claimed she had been discharged in relation for making workers' compensation claim could not forego administrative remedy and instead obtain recovery against employer on tort theory of wrongful discharge under any public policy exception to employer-at-will doctrine).  Because Plaintiff has not exhausted her administrative remedies, her claim must be dismissed as a matter of law.

WHEREFORE, for the foregoing reasons, the District of Columbia and Janice Quintana move this Honorable Court to dismiss the Complaint with prejudice.

> Respectfully Submitted,
>
> PETER J. NICKLES
> Interim Attorney General for the District of Columbia
>
> GEORGE C. VALENTINE
> Deputy Attorney General, Civil Litigation Division
>
> _____/s/_____
> PATRICIA A. JONES [428132]
> Chief, General Litigation Sec. IV
>
> _____/s/_____
> DWAYNE C. JEFFERSON [980813]
> Assistant Attorney General
> One Judiciary Square
> 441 4th St., N.W., 6th Floor South
> Washington, D.C. 20001
> (202) 724-6649; (202) 741-0554
> dwayne.jefferson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDRIA JONES : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No.: 08-620 (CKK) |
| : | |
| JANICE QUINTANA, *et al.,* : | |
| : | |
| Defendants. : | |

## **O**RDER

Upon consideration of Defendants District of Columbia and Janice Quintana's Motions to Dismiss, the Memorandum of Points and Authorities in Support thereof, Plaintiff's opposition thereto, if any, and the entire record herein, it is on this _____ day of _____ 2008, hereby:

ORDERED that the motion is **GRANTED** for the reasons set forth in therein, and it is,

FURTHER ORDERED: that Plaintiff's claims against these Defendants are **DISMISSED WITH PREJUDICE**.

_____
**HON. COLLEEN KOLLAR-KOTELLY**
Judge, U.S. District Court
For the District of Columbia