UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alexandria Jones
Plaintiff

    V.

    : Ca NO. 08-620 CKK

Janice Quintana, et al
Defendants

PLAINTIFF'S OPPOSITION TO DEFENDANTS DISTRICT OF COLUMBIA
AND JANICE QUINTANA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants assert several reasons why Plaintiff's complaint should be dismissed. None of these reasons standing alone or taken together provide adequate grounds for dismissing plaintiff's complaint. This will be more fully explained in the accompanying memorandum.

_____                                      Date June 20 2008
Jerome E. Clair
1200 G street, NW
Suite 800
Washington, DC 20005
(202) 434-4558
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alexandria Jones
　Plaintiff

V.

: Ca No. 08-620 CKK

Janice Quintana, et al
　Defendants

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
THE MOTION TO DISMISS

In order to defeat a 12(b)(6) motion to dismiss, Plaintiff in accordance with Rule 8(a)(2) must provide in her Complaint a "short plain statement showing that she is entitled to relief". *Swierkiewicz V. Sorema N.A.*, 534 U.S. 506 (2002). The allegations must be plausible. *Bell Atlantic Corp. V. Twombly*, 127 S.Ct. 1995 (2007).

The court may dismiss a complaint under Fed.R.Civ.P. 12(b)(6) only when it appears beyond doubt that the plaintiff can prove "no set of facts in support of his claims that would entitle him to relief in this court". *Doe V. United States Dep't of Justice*, 757 F.2d 1092,1102 (D.C. Cir. 1985). In its review the court must construe the complaint in the light most favorable to plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In Re UMWA Employee Ben. Plans Litigation*, 854 F. Supp. 914,915 (D.D.C. 1994) This is the standard used by the District Of Columbia Circuit in deciding a 12(b)(6) motion to dismiss.

**OFFICIAL CAPACITY LAWSUIT**
**(Violation of 42 U.S.C. 1983)**

Defendants allege Plaintiff's Official-Capacity Lawsuit against Defendant Quintana Must Be

dismissed. Page 5 of defendants unnumbered brief.

A District of Columbia employee is liable for her intentional torts. *Butera V. District Of Columbia,* 235 F.3d 637, 657-58 (D.C.Cir. 2001) *See also Estate Of Phillips V. District Of Columbia,* 257 F.Supp2d. 69 (D.D.C. 2003). The intentional violation of an anti-discrimination statute allows the jury to decide if punitive damages are warranted. *Kolstad V. American Dental Ass'n,* 108 F.3d 1431 (D.C.Cir. 1997) Affirmed by U.S. Supreme Court at 527 U.S. 526 (1999).

Defendants write: The lawsuit against Janice Quintana, Director, Office of United Communication, is an official capacity lawsuit. See Complaint at ¶ 2("**at all ltimes relevant to this cause of action Janice Quintana acting in her official capacity as Director, Office of Unified Communications, D.C.**") ( emphasis added). Defendants District of Columbia And Janice Quintana's Motion To Dismiss Plaintiff's Complaint at unnumbered page 5. Notwithstanding this passage which plaintiff used to establish diversity jurisdiction, it is the facts pleaded in the body of the complaint and not any technical designation of the action which constitutes grounds of recovery. *Thomas V. Taylor,* 224 U.S. 73 at p. 79.

Plaintiff, Alexandria Jones learned that Janice Quintana, the director of Office of Unified Communication, had proposed changes. As Ms. Jones expressed them they were: the 311 employees were not trained or certified to handle the calls for service and was advised by the director to transfer the calls back onto the 911 line. The net effect was that more calls are added to the 911 number.

She also explained that the new proposed system was putting more calls in que and it was going to cause emergency calls a delay in service. Ms. Quintana was telling the council she had enough personnel to cover all of the phones, but in fact she did not have enough personnel to cover all of

the phones. She would get supervisors and overtime personnel to assist on the phone when the Mayor or media is present at the office. Complaint ¶¶ 10,11.

December 14, 2007 Ms. Jones sent an email to Councilman Phil Mendelson, Chairman Committee of Public Safety and Judiciary, Jim Graham and David Cantinia, complaining that the proposed change in the use of the 911 telephone number would jeopardize the safety of residents of the District Of Columbia. She also told him she wanted to attend the oversight hearing to express her concerns but was not allowed to attend by Janice Quintana, Director, Office of Unified Communications. Id ¶ 12.

December 17, 2007 she sent an email to Vincent Grey, Chairman of the city council expressing her concerns about the proposed change in the use of the 911 emergency telephone number. She also sent emails to councilperson David A. Cantania and Yvette Alexander expressing her concerns. Id. ¶ 13

December 28, 2008 Ms. Jones sent an email to Mayor Fenty expressing her concerns about the proposed change of 311/911. Id. ¶14.

January 1, 2008 Ms. Jones sent an email to Mayor Fenty asking to meet with him to discuss her concerns regarding the proposed change in the use of the 911 telephone number. Id ¶ 15.

January 7, 2008 Ms. Jones attempted to have a conversation with Mayor Fenty while he was visiting the Office of Unified Communications. According to Rasheena Brawner, another employee in the office of Communications, who was sitting next to Ms. Jones she was not rude or disrespectful when talking to Mayor Fenty. Id. ¶ 16.

January 10, 2008 Janice Quintana, The director placed Ms. Jones on Administrative Leave with pay without just cause other than stating "the Mayor was not pleased with Ms. Jones" and

indicated that she was a disgruntle and disrespectful employee with which the director agreed. Id. ¶ 17.

January 18, 2008 Ms. Jones was served with a 30 day proposed suspension by Janice Quintana. Id.¶ 24.

Janice Quintana placing Ms. Jones on Administrative leave January 10 without just cause and issuing her a proposed 30 day suspension January 18, 2008 were intentional acts. There were no legal justifications nor did Ms. Quintana offer any for these acts. In placing Ms. Jones on leave a reasonable jury could find that Ms. Quintana had violated Ms. Jones rights as a District of Columbia Employee and hold Ms. Quintana liable for damages in her individual capacity just as the police officers were held individually liable in Butera *supra* Id. 657-658.

Defendant's assert Ms. Jones cannot pursue her constitutional claims because of the Comprehensive Merit Protection Act. Defendants District Of Columbia And Janice Quintana's Motion To Dismiss plaintiff's Complaint at unnumbered page 18. This act became effective April 1, 1979. In the case of *Sanders V. District of Columbia,*16 F.Supp.2d 10 (D.D.C. 1998) decided 19 years after the CMPA was enacted, plaintiffs successfully sued the city for violation of Section 1983 and there was no mention by the court that they were barred because they were District of Columbia employees. CMPA is no bar to Ms. Jones' suit.

In fact, a supervisor may be subject to individual liability under section 1983 "if he directly participates in a constitutional violation (internal citation omitted). This is true regardless of whether the supervisor is an authorized policy maker for the purposes of municipal liability. *Springdale Educ Ass'n V. Springdale School Dist.,* 133 F.3d 649 (8th Cir. 1998) Ms. Quintana directly participated in the violation of Ms. Jones' first amendment rights by personally issuing

her a 30 day proposed suspension. Complaint ¶ 24.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress

Section 1983, by its terms, does not create substantive constitutional rights. Rather it provides remedies only for deprivations of rights established by the Constitution or federal Laws. (Internal citations omitted). *Estate Of Phillips V. District Of Columbia,* 257 F.Supp.2d. 69 )(D.D.C. 2003)

The plaintiffs in Estate of Phillips Supra relied on a violation of their due process rights under the fifth Amendment to sustain their 1983 claims. The District of Columbia filed a motion to dismiss and the court denied their motion with respect to the city, Id. 79 and with respect to the individual employees in their individual capacities, Id. 80.

It is the violation of Ms. Jones' first amendment rights, which are discussed below that gives rise to, and makes possible, the 42 U.S.C. 1983 claim.

## FIRST AMENDMENT CLAIM

The determination of whether a public employee has properly [disciplined] an employee for engaging in speech requires "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in

promoting the efficiency of the public services it performs through its employees." *Pickering V. Board Of Education*, 391 U.S. 563, 568 (1968); *Connick V. Myers*, 461 U.S. 138, 140 (1983) *Rankin Et Al. V. McPherson*, 438 U.S. 378.

August 1968 Ms. Jones became employed by the District Of Columbia, formally known as Metropolitan Police Department Communication, as a receipt clerk.

Six months later she was promoted to a dispatcher, one of her duties as dispatcher was to assist citizens when they called 911. If the call concerned an emergency such as a shooting or stabbing she would get the type of weapon used, the name of any witnesses then send the information to an officer on the street. Complaint ¶¶ 7,8.

She also explained that the new proposed system was putting more calls in que and it was going to cause emergency calls a delay in service. Ms. Quintana was telling the council she had enough personnel to cover all of the phones, but in fact she did not have enough personnel to cover all of the phones. She would get supervisors and overtime personnel to assist with the phone when the Mayor or media is present.¶ 11.

December 14, 2007 Ms. Jones sent an email to Councilman Phil Mendelson, Chairman Committee of Public Safety and Judiciary, Jim Graham and David Catania, complaining that the proposed change in the use of the 911 telephone number would jeopardize the safety of residents of the District Of Columbia. She also told him she wanted to attend the oversight hearing to express her concerns but was not allowed to attend by Janice Quintana, Director, Office of unified Communication. Id. 12.

January 11, 2008 around 12:30 p.m. Ms. Jones interviewed with the channel 4 television station to voice her concerns about the proposed change in 911 emergency number. Id. 19.

The emails Ms. Jones sent to the council members and her interview with the television station was to express her concern that the change in use of the 911 number would jeopardize the safety of the residents of the District of Columbia. That is surely an issue of public concern. Her emails and television appearance did not diminish the efficiency of the Office Of Unified Communication in any way. Defendants have not stated directly or even implied there was a diminution in the efficiency of services because of Ms. Jones' activities.

Vigilance is necessary to ensure that public employees do not use authority over employees to silence discourse, not because it hampers public functions, but simply because supervisors disagree with the content of employee's speech. *Rankin*, at 384.

A jury should have the right to decide if Ms. Jones first Amendment right of free speech has been violated by the actions of Janice Quintana. This issue is not appropriate for a 12(b)(6) dismissal at this stage of the proceedings.

## MUNICIPAL LIABILITY

Defendants contend plaintiff has failed to properly plead municipality liability. Unnumbered page 11 Defendants District Of Columbia And Janice Quintana's Motion To Dismiss Plaintiff's Complaint. This position is not supported by the law.

A municipality may be held liable for the civil rights violation of its employees if the wrongdoer was acting in accordance with "a government[] policy or custom, whether made by its lawmakers or by those whose edits or acts may fairly be said to represent official policy." See *Monell V. Dep't Of Social Servs.*, 436 U.S. 658,694, 998 S.Ct. 2018, 56 L.Ed2d 611 (1978); see also *Pembaur V. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). *Sanders V. District Of Columbia,* 16 F. Supp.2d 10 (D.D.C. 1998).

The 8th Circuit has ruled a supervisor may be subject to individual liability whether or not she is an authorized policy maker. *Springdale, Supra.*

In the present case Janice Quintana was the Director of the Office Of Communication. She was clothed with the authority to make policy. She made the policy to change the 911 telephone use. She also made the policy to retaliate against Ms. Jones because of her first Amendment activity.

January 10, 2008 Janice Quintana, the director placed Ms. Jones on Administrative Leave with pay without just cause other than stating "the Mayor was not pleased with Ms. Jones" and indicated that she was a disgruntle and disrespectful employee with which the director agreed. Complaint ¶ 17.

January 11, 2008 around 10:30 a.m. Ms. Jones called Robert Sutton, Assistant floor manager, and advised him she was suffering mental anguish from being wrongfully placed on leave and asked him to provide her with a claim number so she could file her worker's compensation claim. Id.¶ 17.

January 11, 2008 around 12:30 p.m. Ms. Jones interviewed with the channel 4 television station to voice her concerns about the proposed change in 911 emergency number. Id. ¶ 19.

January 11, 2008 Robert Sutton called Ms. Jones around 4:00 p.m. and denied her request for a claim number. Ms. Jones called Michael Patterson, Nat'l Vice President, National Association of Government Employees. Mr. Patterson called Mr. Sutton to advise him that he was required to give Ms. Jones the claim number. Mr. Sutton told Mr. Patterson that Ms. Quintana and Valentine Kelly, Director, Office or Risk Management are friends. Id.¶ 20.

A jury could find that Janice Quintana placed Ms. Jones on leave because she spoke on

television about a matter of public concern. i.e. the safety of the residents of the District Of Columbia. The jury could also infer that Robert Sutton refused to give Ms. Jones a claim number because of a policy set by Ms. Quintana to retaliate[1] against Ms. Jones.

## QUALIFIED IMMUNITY

Government officials are protected by qualified immunity when they perform discretionary functions and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow*, 4457 U.S. 818, 102 S.Ct. 2727. *Sanders V. District of Columbia* 16 F.Supp.2d 10,15 (D.D.C. 1998).

The first Amendment freedom of speech allowing Ms. Jones to speak out on public concerns is so clearly established that any reasonable person would have known that. *Pickering V. Board Of Education.* 391 U.S. 563; *Rankin V. McPherson*, 483 U.S. 378. This constitutional right of Ms. Jones was violated and Ms Quintana knew her acts of placing Ms. Jones on leave was in retaliation for the first amendment activities Ms. Jones engaged in.

Although Ms. Jones has filed a Worker's Compensation claim, that does not prevent her from pursuing these constitutional torts against Ms. Quintana and the District of Columbia.

In the case of *Roberts V. Roadway Exp. Inc.*, 1459 F.3d 1098 (1oth Cir. 1998) the court explained why Workers' compensation cannot preclude constitutional claims for emotional distress. The court writes:

> If Roadway means to argue that Colorado's Workers' Compensation Act provides the exclusive remedy for all work-related injuries including emotional distress caused by

---

[1] A retaliation plaintiff must show that the challenged action "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington North & Santa Fe. Ry. Co V. White,* 126 S.Ct. 2405 (2006)

violations of the civil rights laws, that argument is readily disposed of by the Supremacy Clause. US Const. Art. VI, cl. 2; see *Karcher V. Emerson Elect. Co.*, 91 F.3d 502, 509 (8th Cir. 1996) (state workers' compensation law cannot preempt a federally created right to recover damages for emotional distress under Title VII); *Lopez V. S.B. Thomas, Inc.*, 831 F.2d 1184, 1190 (2d Cir. 1987) (state workers' compensation statute cannot, consistent with Supremacy Clause, bar recovery for emotional distress under 42 U.S.C. § 1981). Id. 1105.

January 11, 2008 around 10:30 a.m. Ms. Jones called Robert Sutton, Assistant floor Manager, and advised him she was suffering mental anguish from being wrongfully placed on leave and asked him to provide her with a claim number so she could file her worker's compensation claim. Complaint.¶ 18. Ms. Jones was complaining of emotional distress[2] brought on by violations of her constitutional rights. This issue is not appropriate for dismissal under Fed.R.Civ.P. 12(b)(6).

## WHISTLEBLOWER ACT[3]

---

[2] Courts have held that plaintiff's testimony, standing alone can support an award for emotional distress. *Bryant V. Aiken Regional Medical Centers Inc.*, 333 F.3d 536,546 (4th Cir. 2003)

[3] Whistleblower Protection For Employees Of Contractors And Instrumentalities Of The District Government
§ 1-615.51 Findings and declaration of purpose.
  The council finds and declares that the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violation of law, or threats to public health or safety without fear of retaliation or reprisal. Accordingly, the Council declares as its policy to:
  (1) Enhance the rights of District employees to challenge the actions or failures of their agencies and to express their views without fear of retaliation through appropriate channels within the agency, complete and frank responses to Council inquires, free access to law enforcement officials, oversight agencies of both the executive and legislative branches of

Defendant writes: there is no individual liability under the Whistleblower protection Act and that plaintiff may not maintain her claim against the District of Columbia.

D.C. Code § 1-615.54. reads in relevant part:

Enforcement

> (A) An employee aggrieved by a violation of § 1-615.53 may bring a civil action before a court or a jury in the Superior Court of the District of Columbia seeking relief and damages, including but not limited to injunction, reinstatement to the same position held before the prohibited personnel action or to an equivalent position, and reinstatement of the employer's seniority rights, restoration of lost benefits, back pay and interest on back pay, compensatory damages, and reasonable costs and attorney fees. A civil action shall be filed within one year after a violation occurs or within one year after the employee first becomes aware of the violation. A civil Action brought pursuant to this section shall comply with the notice requirements of § 12-309.

If defendants position is correct then the above-quoted statute makes no sense at all. But because defendants are incorrect, this action can be maintained.

---

government, and appropriate communication with the public;
   (2) Ensure that acts of the Council enacted to protect individual citizens are properly enforced;
   (3) Provide new rights and remedies to guarantee and ensure that public offices are truly public trust;
   (4) Hold public employees personally accountable for failure to enforce the laws and for negligence in the performance of their duties;
   (5) Ensure that rights of employees to expose corruption, dishonesty, incompetence, or administrative failure are protected;
   (6) Guarantee the rights of employees to contact and communicate with the Council and be protected in that exercise;
   (7) Protect employees from reprisal or retaliation for the performance of their duties; and
   (8) Motivate employees to do their duties justly and efficiently.

As defendants enumerates the prohibited disclosures they cite to paragraph (E) A substantial and specific danger to the public health and safety. Defendants District Of Columbia And Janice Quintana's Motion To Dismiss Plaintiff's Complaint unnumbered page 16 ¶ (E). That is precisely what Ms. Jones alleges was happening with the change in the 911 telephone number. The safety of the residents of the District Of Columbia was being jeopardized.

Specifically defendants write: "plaintiff does not allege that Defendant Quintana had knowledge of her alleged protected disclosures prior to the single disciplinary (i.e. retaliatory) action upon which it rests - the agency's January decision to place Plaintiff on administrative leave with pay. See Complaint generally."Defendants Motion to Dismiss at unnumbered page 15. January 7, 2008 Ms. Jones attempted to have a conversation with Mayor Fenty while he was visiting the Office of Unified Communication. According to Rasheena Brawner, another employee in the office of Communication, who was sitting next to Ms. Jones she was not rude or disrespectful when talking to Mayor Fenty. Complaint ¶ 16.

January 10, 2008 Janice Quintana, the director placed Ms. Jones on Administrative Leave with pay without just cause other than stating :"the Mayor was not pleased with Ms. Jones" and indicating that she was a disgruntle and disrespectful employee with which the director agreed. Id. ¶ 17.

January 18, 2008 Ms. Jones was served with a 30 day proposed suspension by Janice Quintana. Also former H/R Manager Andrea Anderson refused to allow Ms. Jones to review her in-house personnel file.

The two above cited paragraphs make clear Ms. Quintana knew of Ms. Jones protected activity (speaking to the Mayor) before she placed Ms. Jones on leave. Ms. Quintana refers to the

attempted conversation with the Mayor as her grounds for placing Ms. Jones on leave. By January 18, 2008 when Ms. Jones was served with the 30 day proposed suspension Janice Quintana had known of the protected activity.

January 11, 2008 around 10:30 a..m. Ms. Jones called Robert Sutton, Assistant floor Manager, and advised him she was suffering mental anguish from being wrongfully placed on leave and asked him to provide her with a claim number so she could file her worker's compensation claim. Complaint ¶ 18.

January 11, 2008 around 12:30 p.m. Ms Jones interviewed with the channel 4 television station to voice her concerns about the proposed change in 911 emergency number. Id. ¶ 19.

January 11, 2008 Robert Sutton called Ms. Jones around 4:00 p.m. and denied her request for a claim number. Id. ¶ 20.

A jury could infer that Robert Sutton denied Ms. Jones a claim number to file her worker's compensation claim because of her protected activity on television earlier in the day. The anti-retaliation statute that provides protection against deprivation of constitutional torts[4] is so expansive it covers all employees in an agency. Whether they knew personally of the protected

---

[4] 42 U.S.C. § 2003e-3. Other unlawful employment practices
(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees of applicants for employment, for any employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

activity or not.

Defendants assert the Complaint should be dismissed because plaintiff has not exhausted her administrative remedies. Defendants District Of Columbia And Janice Quintana's Motion To Dismiss Plaintiff's Complaint at unnumbered page 18.

There is no requirement to exhaust administrative remedies before filing a whistleblower complaint. The language of D.C.Code § 1-615.545 supra, which was enacted in 1998 sets out the requirements for filing a Whistleblower complaint. The city council was aware of The Comprehensive Merit Protection Act which became effective April 1, ,1979. D.C. Code § 1-636.01(h). If the council wanted District Of Columbia employees to exhaust administrative remedies before filing a Whistleblower complaint it would have been put in the statute. There is no such language in the Whistleblower statute. In fact, The whistleblower statute bars exhaustion of administrative remedies. § 1-615.56 Election Of Remedies reads in relevant part:

> (a) The institution of a civil action pursuant to § 1-615.54 shall preclude an employee from pursuing any administrative remedy for the same cause of action from the Office of Employee Appeals or from an arbitrator pursuant to a negotiated grievance and arbitration procedure or an employment contract.
>
> (b) No civil action shall be brought pursuant to § 1-615.54 if the aggrieved employee has had a final determination on the same cause of action from the Office of Employee Appeals or from an arbitrator pursuant to a negotiated grievance procedure or an employment contract.
>
> © Except as provided in subsections (a) and (b) of this section, nothing in the subchapter

shall diminish the rights and remedies of an employee pursuant to any other federal or District law.

From the above statute it is clear no exhaustion of remedies are required or allowed in order for Ms. Jones to maintain her whistleblower claim against the District of Columbia.

## CONCLUSION

For all of the foregoing reasons, plaintiff ask that Defendants District Of Columbia And Janice Quintana's Motion To Dismiss Plaintiff's Complaint be denied. There are issues that require a decision by a jury.

_____
Jerome E. Clair
1200 G Street, NW
Suite 800
Washington, DC 20005
(202) 434-4558
Attorney for Plaintiff

Date: June 20, 2008