**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ALEXANDRIA JONES,

    Plaintiff,

     v.

JANICE QUINTANA, *et al.*,

    Defendants.

Civil Action No. 08-620 (CKK)

---

**MEMORANDUM OPINION**
(September 30, 2009)

Plaintiff Alexandria Jones, a former employee of the District of Columbia Office of Unified Communications ("OUC"), brings the above-captioned lawsuit against the District of Columbia ("D.C." or the "District") and Janice Quintana, Director of the OUC (collectively, with D.C., "the Defendants"). She alleges retaliation in violation of the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq.* ("WPA") (Count I); retaliation in violation of the D.C. Workers' Compensation statute, D.C. Code § 32-1501 *et seq.* (Count II); deprivation of her First Amendment Rights in violation of 42 U.S.C. § 1983 (Count III); failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") (Count IV); and retaliation in violation of the ADA, 42 U.S.C. § 12203(a) (Count V). Currently pending before the Court is Defendants' [20] Motion to Dismiss Plaintiff's Amended Complaint**.** After a searching review of the parties' briefing, the relevant statutory provisions and case law, and the record of this case as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' [20] Motion to Dismiss. Specifically, and for the reasons that follow:

(1)     With respect to Count I, Defendants' motion is GRANTED insofar as Defendants contend that Count I must be dismissed as against Defendant Quintana, but is DENIED insofar as Defendants contend that Count I must be dismissed as against the District;

(2)     With respect to Count II, Defendants' motion is GRANTED, and Count II is dismissed in its entirety;

(3)     With respect to Count III, Defendants' motion is

    (a)     DENIED insofar as Defendants assert that Plaintiff has failed to sufficiently allege that she spoke out as a private citizen;

    (b)     GRANTED insofar as Defendants contend that Plaintiff's Section 1983 claim against Defendant Quintana in her official capacity should be dismissed as redundant;

    (c)     DENIED WITHOUT PREJUDICE insofar as Defendants assert that Defendant Quintana is entitled to qualified immunity;

    (D)     GRANTED insofar as Defendants seek to dismiss Plaintiff's Section 1983 claim against the District;

(4)     With respect to Count IV, Defendants' motion is GRANTED, and Count IV is dismissed in its entirety; and

(5)     With respect to Count V, Defendants' motion is DENIED.

Accordingly, at this time, the following two claims survive Defendants' [20] Motion to Dismiss: Count I (D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq.*) as against the District, and Count V (retaliation in violation of the ADA, 42 U.S.C. § 12203(a)) as against the District.  With respect to Plaintiff's Section 1983 claim, to the extent Plaintiff asserts that she intended to allege her Section 1983 claim against Defendant Quintana in her individual capacity as well as in her official capacity, Plaintiff must amend her complaint, by no later than **October 16, 2009**, to specify that Defendant Quintana is being sued in her individual capacity and to

allege facts sufficient to support her claim that Defendant Quintana should be held personally liable.  If Plaintiff declines to do so, the Court shall treat her failure to timely amend as a concession that she does not seek to assert her Section 1983 claim against Defendant Quintana in her individual capacity.

## I. BACKGROUND

A.  *Plaintiff's Employment at the OUC and Defendant Quintana's Proposed Changes to the Emergency 911 System*

As set forth in the Amended Complaint, Plaintiff first became employed by the D.C. Metropolitan Police Department in August 1998.  Amended Complaint, Docket No. [19], ¶ 2 ("Am. Compl.").[1]  Six months later, Plaintiff was promoted to a dispatcher position in the OUC , which provides centralized management of both emergency and non-emergency calls within the District.  *Id*. ¶ 3.  Plaintiff's primary duties at the OUC involved handling emergency 911 calls and transmitting information to the necessary response teams.  *Id*.

Plaintiff alleges that Defendant Quintana, in her role as Director of the OUC, proposed various changes to the manner in which emergency and non-emergency calls would be routed to OUC dispatchers.[2]  *Id.* ¶ 5.  According to Plaintiff, she was concerned that these changes, which allegedly involved the transferring of 311 calls back onto the 911 line, "would jeopardize the

---

[1] In setting forth the relevant background, and in considering Defendants' Motion to Dismiss, the Court has considered, as it must, only the "facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record."  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall Co. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n. 6 (D.C. Cir. 1993).

[2] Although the Amended Complaint is silent as to when Defendant Quintana allegedly proposed these changes and as to when Plaintiff herself learned of the proposed modifications, it is apparent that Plaintiff, at a minimum, became aware of the proposed changes sometime on or before December 14, 2007.  *See* Am. Compl. ¶¶ 5-7.

3

safety of residents of the District of Columbia." *Id.* ¶ 7.  In particular, Plaintiff believed that the changes would result in "putting more calls in que [*sic*] and it was going to cause emergency calls a delay in service." *Id.* ¶ 6.  Plaintiff further asserts that Defendant Quintana misrepresented to the D.C. Council that "she had enough personnel to cover all of the phones." *Id.*

   B.  *Plaintiff's Alleged Communications Regarding the Proposed OUC Changes*

   Between December 14, 2007 and January 24, 2008, Plaintiff repeatedly attempted to bring her concerns regarding the OUC proposed changes to the attention of the D.C. Council, Mayor Adrian Fenty and the public in general. *Id.* ¶¶ 7-10, 15, 23.  According to Plaintiff's Amended Complaint, on December 14, 2007, Plaintiff sent an e-mail to members of the D.C. Council "complaining that the proposed change in the use of the 911 telephone number would jeopardize the safety of residents of the District of Columbia." *Id.* ¶ 7.  Shortly thereafter, on December 17, 2007, Plaintiff sent another e-mail to members of the D.C. Council again "expressing her concerns about the proposed changes in the use of the 911 emergency telephone number." *Id.* ¶ 8.  Plaintiff also sent an e-mail to Mayor Fenty on December 28, 2007, similarly "expressing her concerns about the proposed change," and again on January 1, 2008, "asking to meet with him to discuss her concerns regarding the proposed change." *Id.* ¶¶ 9-10. Approximately a week later, Plaintiff attempted to have an in-person conversation with Mayor Fenty when he visited the OUC on January 7, 2008.[3] *Id.* ¶ 11.  A few days later, on January 11, 2008, Plaintiff interviewed with a local television station "to voice her concerns about the

_____

  [3] Plaintiff has not specified in her Amended Complaint the reason for her attempted conversation with Mayor Fenty. *See* Am. Compl. ¶ 11.  Given her previous e-mails to Mayor Fenty regarding the proposed OUC changes and her request to meet with him to discuss her concerns, it is nonetheless reasonable to infer, viewing the facts in a light most favorable to Plaintiff, that she attempted to speak to Mayor Fenty about the OUC proposal.

proposed change in the 911 emergency number." *Id.* ¶ 15.  Finally, on January 24, 2008, Plaintiff

testified before the D.C. Council.[4]  *Id.* ¶ 25.

C.     *Alleged Actions Taken By Defendants Against Plaintiff as a Result of Plaintiff's Communications Regarding the OUC Proposed Changes*

On January 10, 2008, Plaintiff was placed on administrative leave with pay by Defendant

Quintana.  *Id.* ¶ 12.  Plaintiff alleges that the only reason given for the decision to place her on

administrative leave was that "'the Mayor was not pleased with Ms. Jones' and indicated she was

a disgruntle [*sic*] and disrespectful employee." *Id.*  According to Plaintiff, however, she was

neither rude or disrespectful to Mayor Fenty during their discussion on January 10, 2008, as

Defendant Quintana claimed.  *Id.* ¶ 11.

Early the next morning, on January 11, 2008, Plaintiff told her floor manager that she was

suffering mental anguish "from being wrongfully placed on leave," and requested a claim

number so that she could file a workers' compensation claim.  *Id*. ¶ 13.  According to Plaintiff,

her floor manager refused to provide her with a claim number and advised Plaintiff's union

representative that he had been ordered by Defendant Quintana that he was not to provide

Plaintiff with a workers' compensation claim number.  *Id.*¶¶ 14, 61.  Plaintiff indicates that she

was eventually issued a workers' compensation claim number on January 17, 2008, but only after

a representative from Plaintiff's union contacted her floor manager on Plaintiff's behalf.  *Id.* ¶¶

16-19.

On January 18, 2009, Plaintiff was given a 30-day proposed suspension by Defendant

Quintana.  *Id.* ¶ 19.  However, on February 11, 2008, the proposed suspension was found to be

---

[4] The Amended Complaint does not specify the substance of Plaintiff's testimony before the D.C. Council on January 24, 2008, nor does it indicate whether Plaintiff was testifying as part of her official duties at the OUC.  *See* Am. Compl. ¶ 25.

"not sustained and the charges were dismissed without prejudice." *Id.* ¶ 28.

Although the proposed suspension was overruled, Plaintiff's status at the OUC after January 18, 2008, is nonetheless unclear.  In particular, it appears that Plaintiff may have taken leave from work for some unspecified period of time as a result of her alleged job-related anxiety.   Plaintiff alleges that on February 28, 2008, she requested that she be allowed "to use her annual leave in lieu of sick leave to cover the time she would be away from work," thus suggesting that Plaintiff had taken leave at some point after January 18, 2008.  *See id*. ¶ 36. According to Plaintiff, although her request to use annual leave was initially approved by her supervisor on February 29, 2008, Defendant Quintana subsequently denied the request on March 5, 2008, and required Plaintiff "to use her sick time to cover the time she has been away from work."  *Id.* ¶¶ 43, 64-65.

D.     *Plaintiff's Alleged "Impairment/Disability for Anxiety" and Workers'
       Compensation Claim*

Beginning January 17, 2008, Plaintiff visited multiple health care providers regarding her alleged job-related anxiety.  *Id*. ¶¶ 18, 24, 46, 49.  Specifically, Plaintiff alleges that she was "diagnosed with an impairment/disability for anxiety," *id*. ¶ 24, and was placed on medication for "job related anxiety," *id.* ¶ 46.  *See also id*. ¶ 49 (alleging that Plaintiff was found to "be suffering from anxiety depression").  According to Plaintiff, "[t]he suggested reasonable accommodation was that [Plaintiff] work 8 hour shifts instead of 10 hour shifts."  *Id*. ¶ 24.

As stated previously, Plaintiff was issued a workers' compensation claim number on January 17, 2008.  *Id*. ¶ 19.  Upon receipt of the claim number, she spoke with a claim examiner at the D.C. Office of Risk Management ("ORM"), who advised Plaintiff that ORM would send her the appropriate forms and have an investigator meet with her to take her statement.  *Id.* ¶ 22.

6

Plaintiff met with the investigator on February 8, 2008.  *Id.* ¶ 28.

On or around February 20, 2008, ORM informed Plaintiff that it had not received her paperwork and therefore planned to deny her claim for workers' compensation benefits.  *Id.* ¶ 30. Upon being so advised, Plaintiff contacted ORM to discuss the missing paperwork.  *Id.* ¶ 31. According to Plaintiff, she then completed the paperwork as required, submitting the material to the ORM on February 28, 2008.  *Id.* ¶¶ 32-34, 35.  Nonetheless, on March 3, 2008, ORM sent Plaintiff a letter advising her that her disability claim had been denied due to abandonment.  *Id.* ¶ 37.

Plaintiff further asserts that she visited the OUC on March 5, 7 and 12, 2008, in order to provide work with a leave slip from her doctor and to receive advice on the workers' compensation claims process.  *Id.* ¶¶ 39, 41.  Plaintiff was told during these visits that Defendant Quintana had ordered that Plaintiff could not go onto the operations floor.  *Id.* ¶¶ 39, 41, 42. Plaintiff also contends that she requested a "continuation of pay," but that, as of the date this lawsuit was filed, she had not yet "received her statutory 21 days of continuing pay."  *Id.* ¶¶ 42- 43.[5]

E.     *Plaintiff Files the Instant Lawsuit*

Plaintiff filed this action on April 10, 2008.  *See* Compl., Docket No. [1].  In her original Complaint, Plaintiff alleged retaliation in violation of the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq*. (Count I); retaliation in violation of the D.C. Workers' Compensation statute, D.C. Code § 32-1501 *et seq*. (Count II); and deprivation of her First

---

[5] Plaintiff has not elaborated further on her allegations that she was denied her "statutory 21 days of continuing pay."  It is therefore unclear from the face of the Amended Complaint what statute Plaintiff is referring to and on what legal basis she claims she was entitled to "21 days of continuing pay."  *See* Am. Compl. ¶¶ 42-43.

Amendment Rights in violation of 42 U.S.C. § 1983 (Count III).  Plaintiff's claims were based

on the events described above occurring from December of 2007 through the filing of the

complaint.

      *F.*     *Alleged Events Occurring After the Filing of this Lawsuit*

      Plaintiff alleges that she continued to be subject to illegal conduct by Defendants even

after filing the above-captioned matter.  In particular, Plaintiff alleges that on June 6, 2008, she

was denied leave, although such leave had previously been approved.  Am. Compl. ¶ 47.

Plaintiff also asserts that on July 22, 2008, she filed a complaint with the D.C. Office of Human

Rights ("OHR"), alleging that OUC's failure to provide her with reasonable accommodations

(*i.e.*, an 8-hour shift) constituted a violation of the ADA.  *Id.* ¶ 48.  According to Plaintiff, after

filing the complaint with the OHR, she received a letter from the OUC's human resources

department "threatening to fire her."  *Id.* ¶ 75.  Shortly thereafter, at some unspecified time in

August of 2008, Plaintiff was "placed on AWOL."  *Id.* ¶ 76.

      Plaintiff asserts that she was ultimately terminated from her position at the OUC

approximately one month after she filed her complaint with the OHR.  *Id.* ¶¶ 50, 77.  According

to Plaintiff, the OUC's human resource manager advised her that "they could not determine if

[she] was suffering from a disability," despite the fact that Plaintiff had provided the OUC with a

medical report from a doctor who had diagnosed Plaintiff to be suffering from "anxiety

depression," and therefore "denied [Plaintiff] reasonable accommodations and ultimately fired

[Plaintiff] from her job."  *Id.* ¶¶ 49, 50.

      *G.*     *Plaintiff's Amended Complaint*

      Plaintiff amended her original complaint in this action on January 2, 2009, to include

additional allegations discussed above and to add two additional claims to her complaint: (1) a

claim that Defendants failed to provide a reasonable accommodation for her mental anxiety in

violation of the ADA (Count IV); and (2) a claim that Defendants terminated her employment in

retaliation for filing an EEO complaint in violation of the ADA (Count V).

Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's

Amended Complaint.  *See* Defs.' MTD, Docket No. [20].  Plaintiff has since filed her

Opposition, *see* Pl.'s Opp'n, Docket No. [23], and Defendants their reply, *see* Defs.' Reply,

Docket No. [26].  Accordingly, Defendants' motion is fully briefed and now ripe for the Court's

resolution.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

*accord Erickson v. Pardus*, 551 U.S. 89, 93 (per curiam).  Although "detailed factual allegations"

are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of

"entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a

formulaic recitation of the elements of a cause of action."  *Id.* at 1964-65; *see also Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986).  Instead, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

### III. DISCUSSION

Defendants have moved to dismiss each of the five counts asserted in Plaintiff's Amended Complaint. For reasons that shall become clear below, the Court first considers Defendants' arguments with respect to Plaintiff's Section 1983 Claim (Count III), before then turning to address Plaintiff's claims for violation of the D.C. WPA (Count I), retaliation in violation of the D.C. Workers' Compensation statute, D.C. Code § 32-1501 *et seq.* (Count II), failure to provide a reasonable accommodation in violation of the ADA, (Count IV); and retaliation in violation of the ADA (Count V).

A.      *Plaintiff's Section 1983 Claim*

The Court begins its discussion by considering Count III of Plaintiff's Amended

Complaint, in which Plaintiff alleges a violation of her First Amendment rights pursuant to Section 1983. Am. Compl. ¶¶ 68-71. According to Plaintiff, she was retaliated against for exercising her "constitutional right under the 1st Amendment of the U.S. Constitution to speak to the media [and] to voice her concerns about the safety of D.C. residents." *Id.* ¶ 68. More specifically, Plaintiff alleges that Defendant Quintana placed Plaintiff on administrative leave and denied her pay in an "attempt to stop [Plaintiff] from talking to the media and city council." *Id.* ¶¶ 68-69. She now seeks monetary damages for the alleged violation of her First Amendment rights pursuant to Section 1983. *See id.* ¶ 71.

In moving for dismissal of Plaintiff's Section 1983 claim, Defendants set forth three principal arguments. First, Defendants contend that Plaintiff has failed to set forth sufficient facts to establish the predicate First Amendment violation. Defs.' MTD at 7-11. Second, Defendants assert that Plaintiff's Section 1983 claim as alleged against Defendant Quintana should be dismissed because (a) to the extent the claim is asserted against Defendant Quintana in her official capacity, the claim is duplicative of Plaintiff's claim against the District, and (b) to the extent the claim is asserted against Defendant Quintana in her individual capacity, she is entitled to qualified immunity. *Id*. at 12. Third and finally, Defendants assert that Plaintiff has failed to properly plead municipal liability under Section 1983 as is required to maintain a claim against the District. *Id*. at 11. The Court shall address these arguments in turn.

> 1.  Plaintiff has Pled Sufficient Facts to Establish that her Disclosures Enjoy First Amendment Protection

"A public employee like [Plaintiff] 'does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment.'" *Winder v. Erste*, 566 F.3d 209, 214 (D.C. Cir. 2009) (hereinafter "*Winder II*") (quoting *Connick v. Myers*, 461

U.S. 138, 140 (1983)).  "At the same time, the government as employer must be able to prevent employees' speech from interfering with the 'efficient provision of public services.'"  *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).  "The threshold question for a public employee's First Amendment claim is 'whether the employee spoke as a citizen on a matter of public concern.'"  *Id.* (quoting *Garcetti*, 547 U.S. at 418).  "If so, [her] speech is protected unless the government can justify treating its employees differently from other citizens.  But if the employee spoke 'pursuant to' [her] official duties, [s]he cannot claim constitutional protection." *Id.* (quoting *Garcetti*, 547 U.S. at 421).

Defendants contend that Plaintiff has failed to meet this threshold requirement, arguing that Plaintiff, in voicing her opposition to the OUC proposal, "spoke out during the course of her employment as a government worker" and not as a private citizen.  Defs.' MTD at 8.  The Court disagrees.  Although Plaintiff's allegedly protected statements "concerned the subject matter of [her] employment . . ., this [] is nondispositive."  *Garcetti*, 547 U.S. at 420.  Similarly, although it appears that some of these allegedly protected communications may have occurred at Plaintiff's place of work, this too does not preclude Plaintiff's constitutional claim.  *See id.* ("Employees in some cases may receive First Amendment protection for expressions made at work.").  Rather, the critical inquiry is whether Plaintiff spoke "pursuant to [her] official duties." *Id.*

For example, in *Garcetti*, the Supreme Court held that a state deputy district attorney did not enjoy First Amendment protection for a deposition memorandum he wrote notifying his supervisors of inaccuracies in an affidavit used to obtain a search warrant.  547 U.S. at 413.  The Supreme Court emphasized that the memorandum had been written pursuant to the plaintiff's

official duties.  *Id*. at 414, 421.  Similarly, the D.C. Circuit concluded in *Winder II* that the former transportation manager for the D.C. Public Schools did not enjoy First Amendment protection when he reported the District's failure to comply with court orders to his supervisors. 566 F.3d at 215.  In so holding, the D.C. Circuit emphasized that the plaintiff, "[i]n reporting his supervisors' alleged obstruction of the [court] orders . . ., was fulfilling his undisputed duty to see that those orders were implemented."  *Id.*   The D.C. Circuit therefore concluded that the plaintiff spoke pursuant to his official duties and was not speaking as a citizen when he alleged noncompliance.  *Id*.

Applying these principles to the case at hand, the Court finds that Plaintiff has sufficiently alleged facts from which the reasonable inference can be drawn that she was speaking as a private citizen and not pursuant to her official duties.  According to Plaintiff, she was employed as a dispatcher in the OUC, and her primary duties included handling emergency 911 calls and transmitting information to the necessary response teams.  Am. Compl. ¶ 3.  Plaintiff's alleged job responsibilities did not include making managerial decisions regarding the handling of 911 calls nor is there any suggestion that Plaintiff was required, let alone invited, to report her concerns regarding the handling of emergency and non-emergency calls to her supervisors or to members of the District government.  *Cf. Williams v. Johnson*, 537 F. Supp. 2d 141, 151-52 (D.D.C. 2008) (concluding that plaintiff's speech was not afforded First Amendment protection when she testified to Councilpersons regarding District-held contracts because her job duties "required her to provide her findings to senior executive personnel in the District government" *but* that she sufficiently alleged that she was speaking as a citizen when she subsequently met with a particular Councilmember and raised similar concerns).  Rather, Plaintiff's position as an

13

OUC dispatcher involved "assist[ing] citizens when they called 911" and "send[ing] the information to an officer on the street."  Am. Compl. ¶ 3.

Defendants nonetheless assert that Plaintiff's claim must fail because "it is clear that in voicing concerns about the proposed 911 system change, Plaintiff was speaking out—not as a private citizen, but, as an employee who would have had to handle the additional calls."  Defs.' MTD at 10.  This argument is based on a misreading of Plaintiff's Amended Complaint.  Plaintiff does not allege solely that she spoke out because she was worried that she would be required to work more or that her job would become more difficult as a result of the OUC proposed changes.  Rather, Plaintiff has also alleged that she spoke out regarding her concerns that the proposed changes would detrimentally affect the public's safety.  Ultimately, Plaintiff will be required to demonstrate as much.  At this stage, however, the Court finds that Plaintiff has sufficiently alleged facts from which the reasonable inference may be drawn that her communications were not made "pursuant to her official duties."

2.      Plaintiff's Section 1983 Claim Against Defendant Quintana

Defendants next contend that Plaintiff's Section 1983 claim as alleged against Defendant Quintana should be dismissed because (a) to the extent the claim is asserted against Defendant Quintana in her official capacity, the claim is duplicative of Plaintiff's claim against the District, and (b) to the extent the claim is asserted against Defendant Quintana in her individual capacity, she is entitled to qualified immunity.

As an initial matter, it is entirely unclear to the Court whether Plaintiff in fact intended to bring her Section 1983 claim against Defendant Quintana in her individual capacity, in her official capacity, or both.  Plaintiff's Complaint, although not filed *pro se*, is by no means a

model of artful drafting.  In particular, it does not indicate whether Plaintiff intended to bring suit

against Defendant Quintana in her individual or official capacity.  In an abundance of caution,

Defendants, in addressing Plaintiff's Section 1983 claim, have presumed that Plaintiff asserts the

claim against Defendant Quintana in both her individual and official capacities.  Although

Plaintiff herself suggests in her opposition that she intended to assert her Section 1983 claim

against Defendant Quintana only in her individual capacity, s*ee* Pl.'s Opp'n at 2-3, it is difficult

to decipher Plaintiff's exact position on this issue as Plaintiff's briefing in opposition to

Defendant's motion includes only a brief, conclusory response that does little to clarify Plaintiff's

intent in filing her Section 1983 claim.  Consequently, the Court cannot conclude on the record

now before it whether Plaintiff means to assert this claim against Defendant Quintana in her

official capacity and/or individual capacity.

Regardless, the Court finds that, as a practical matter, this ambiguity in Plaintiff's

Amended Complaint impacts only her Section 1983 claim to the extent she intended to assert it

against Defendant Quintana in her *individual* capacity.  For the reasons discussed below, the

Court easily concludes that, assuming Plaintiff's Section 1983 claim is asserted against

Defendant Quintana in her official capacity, the claim should be dismissed as duplicative.  The

question, however, of whether Plaintiff's Section 1983 claim survives Defendants' motion to

dismiss—to the extent it is asserted against Defendant Quintana in her individual capacity—is

more complicated, and the Court declines to consider it without further clarification from

Plaintiff as to the exact nature of her allegations against Defendant Quintana with respect to her

Section 1983 claim, as explained below.

15

a.   Plaintiff's Section 1983 claim is redundant to the extent it is
asserted against Defendant Quintana in her official capacity.

First, even assuming Plaintiff intended to assert her Section 1983 claim against Defendant

Quintana in her official capacity, the Court finds that the claim should be dismissed as

duplicative of her claim against the District. "An official capacity suit 'is not a suit against the

official personally, for the real party in interest is the entity.'" *Robinson v. D.C.*, 403 F. Supp. 2d

39, 49 (D.D.C. 2005). "This Circuit has recognized that '[a] section 1983 suit for damages

against municipal officials in their official capacities is . . . equivalent to a suit against the

municipality itself.'" *Id.* (quoting *Atchinson v. D.C.*, 73 F.3d 418, 424 (D.C. Cir.1996)).

"Accordingly, 'a plaintiff seeking to recover on a damages judgment in an official-capacity suit

must look to the government entity itself.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166

(1985)).

In light of this reality, district courts in this Circuit routinely dismiss claims brought

against District officials in their official capacities where such claims are duplicative of claims

brought against the District itself.

> Although neither the Supreme Court nor the District of Columbia Circuit have held
> that government officials sued in their official capacities in conjunction with suits
> also filed against the municipality should be summarily dismissed, this is the
> overwhelming approach that has been taken by members of this Court, as well as the
> position taken by other courts. This approach is based on the theory that retaining the
> official as a named defendant is a "redundant and an inefficient use of judicial
> resources."

*Price v. D.C.*, 545 F. Supp. 2d 89, 94 (D.D.C. 2008) (quoting *Chisholm v. Superior Court of*

*D.C.*, No. 06-2174, 2007 WL 1601718, at *2 (D.D.C. June 4, 2007)) (collecting cases); *see also*

*Hardy v. D.C.*, 601 F. Supp. 2d 182, 186-87 (D.D.C. 2009) ("Because plaintiffs make the same

claims against the District of Columbia, the same claims against [former Director of D.C.

16

Department of Corrections] and [former Jail Warden] in their official capacities are redundant

and will be dismissed."); *Price*, 545 F. Supp. 2d at 94-96 (dismissing Section 1983 and

negligence claims against District officials as "not only redundant but also unnecessary when the

municipality is also a named defendant").  Accordingly, as Plaintiff's official-capacity claim

against Defendant Quintana merges into and is redundant of her claim against the District,

Defendants' [20] Motion to Dismiss shall be GRANTED to the extent it seeks dismissal of

Plaintiff's Section 1983 claim against Defendant Quintana in her official capacity.

> b.      The Court declines to consider the merits of Defendant Quintana's
> qualified immunity claim at this time.

In an abundance of caution, Defendants have also argued that Defendant Quintana is

entitled to qualified immunity to the extent Plaintiff's Section 1983 claim is asserted against her

in her individual capacity.  The Court concludes, however, that it is unfair to Defendant Quintana

to require her to advance a claim of qualified immunity without specific notice as to the exact

nature of the factual allegations against her in her personal capacity.  Rather, Plaintiff shall be

required to amend her complaint to provide the requisite notice to Defendant Quintana before the

Court shall consider arguments with respect to this claim.  The Court therefore declines to

consider the merits of Defendant Quintana's qualified immunity claim at this time.

Accordingly, Defendants' [20] Motion to Dismiss is DENIED WITHOUT PREJUDICE

with respect to the issue of qualified immunity.  To the extent Plaintiff intends to allege her

Section 1983 claim against Defendant Quintana in her individual capacity, Plaintiff must amend

her complaint, by no later than **October 16, 2009**, to specify that Defendant Quintana is being

sued in her individual capacity and to allege facts sufficient to support her claim that Defendant

17

Quintana should be held personally liable.  If Plaintiff declines to do so, the Court shall treat her

failure to timely amend as a concession that she does not seek to assert her Section 1983 claim

against Defendant Quintana in her individual capacity.  Plaintiff is further advised that if she

chooses to amend her complaint, she may amend only to further clarify her Section 1983 claim

with respect to Defendant Quintana in her individual capacity and to remove those claims the

Court has dismissed in this Memorandum Opinion and Order; Plaintiff may not otherwise amend

her complaint absent either Defendants' or this Court's consent, pursuant to Federal Rule of Civil

Procedure 15(a).

Finally, in the event Plaintiff does amend her complaint to specify that her Section 1983

claim is asserted against Defendant Quintana in her individual capacity, the Court shall permit

Defendant Quintana an opportunity to file a renewed motion with respect to her claim of

qualified immunity, if she deems it appropriate.  Counsel for both parties are hereby placed on

notice that any such briefing ***must*** include a detailed and legally-supported analysis of Defendant

Quintana's qualified immunity claim that specifically examines Plaintiff's allegations in light of

the relevant qualified immunity case law.[8]

3.      Plaintiff's have Failed to Plead Municipal Liability

The Court now turns to Defendants' third and final argument regarding Plaintiff's Section

1983 claim—that Plaintiff cannot pursue such a claim against the District because she has failed

---

[8]  The parties are advised that in the event further briefing is required they should not simply re-file their instant briefing on this issue.  Although the Court does not consider the merits of Defendant Quintana's qualified immunity claim, it is readily apparent nonetheless that the parties' current briefing on this issue is inadequate, consisting largely of legally-unsupported and conclusory allegations that do little to assist the Court in resolving the complicated issue of qualified immunity.

to plead sufficient facts to support municipal liability.  In order to hold a municipality liable for

civil rights violations under Section 1983, the municipality must have acted in accordance with a

"government policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658,

694, (1978).  *See also Fierson v. D.C.*, 506, F.3d 1063, 1066 (D.C. Cir. 2007) ("To impose

liability on the District under 42 U.S.C. § 1983, [plaintiff] must show not only a violation of

rights under the Constitution or federal law, but also that the [District's] custom or policy caused

the violation") (internal citation omitted).  Proof of a single incident of unconstitutional activity

is, in general, insufficient to impose liability.  *See Monell*, 436 U.S. at 694.  However, a Section

1983 claim may withstand a motion to dismiss if the complaint alleges one instance of

constitutional deprivation and identifies "some factual basis for the allegation of a municipal

custom or policy" behind that activity.  *Atchinson*, 73 F.3d at 423.

The Court concludes that Plaintiff has not sufficiently alleged facts to support the claim

that the District had a municipal custom or policy of retaliating against employees for exercising

their First Amendment rights.  Plaintiff, in her Amended Complaint, has not pointed to any other

employee who suffered similar retaliation nor demonstrated that the single incident of

disciplinary action at issue—Plaintiff's being placed on administrative leave with pay—was

made pursuant to an established D.C. policy or practice.  *See generally* Am. Compl.  Plaintiff's

only argument to the contrary is without merit.  Specifically, Plaintiff contends that Defendant

Quintana was "clothed with authority to make policy" and that when she placed Plaintiff on

leave, she "made the policy to retaliate against Ms. Jones because of her [F]irst Amendment

activity."  Pl.'s Opp'n at 7.  Although it is reasonable to infer from Plaintiff's Amended

19

Complaint that Defendant Quintana possessed the authority to make employment decisions and

discipline OUC employees and that she exercised this authority against Plaintiff, Plaintiff has not

proffered any facts alleging that Defendant Quintana had "the authority to set employment policy

for the District of Columbia—a distinction that is significant in considering the question of

municipal liability." *Tabb*, 605 F. Supp. 2d at 96. *See also Fox v. D.C.*, 990 F. Supp. 13, 20

(D.D.C. 1997) (holding that a municipality "could not be liable under § 1983 when the officials

responsible for the alleged constitutional deprivation…possessed only the authority to make

employment *decisions* (*i.e.*, transferring or terminating an agency employee), *not* the authority to

set employment *policy* for the City.") (citing *City of St. Louis v. Praproptnki*, 485 U.S. 112, 128-

30 (1988) (emphasis in original)).  Nothing in the evidence proffered by Plaintiff supports a

finding that Defendant Quintana was a final decision-maker with respect to employment policy

or that the municipality sanctioned the disciplinary action taken against Plaintiff.  Accordingly,

Plaintiff has failed to sufficiently allege that a municipal custom or policy deprived Plaintiff of

her constitutional rights, and Defendants' [20] Motion to Dismiss Count III as against Defendant

District of Columbia is GRANTED.

> B.    *Plaintiff's D.C. Whistleblower Protection Act Claim*

The Court turns next to Plaintiff's claim that Defendants violated the District's

Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq*. ("WPA" or the "Act"), as asserted

in Count I of her Amended Complaint.  More specifically, Plaintiff alleges that Defendant

Quintana's decision on January 10, 2008, to place Plaintiff on administrative leave was an act of

retaliation against her for communicating her concerns regarding the OUC proposal to the D.C.

Council and to the Mayor.  Am. Compl. ¶¶ 53-57.  According to Plaintiff, Defendants' conduct

was in violation of the WPA, which prohibits a supervisor from "threaten[ing] to take or tak[ing]

a prohibited personnel action[9] or otherwise retaliat[ing] against an employee because of the

employee's protected disclosure . . . ."  D.C. Code § 1-615.53.    Defendants have moved for

dismissal of Plaintiff's WPA claim for two reasons.  First, Defendants contend that Plaintiff

cannot maintain her WPA claim against Defendant Quintana because the WPA does not create a

private cause of action against an employee's supervisor.  Defs.' MTD at 18.  Second,

Defendants assert that Plaintiff fails to state a claim under the WPA because she has not alleged

sufficient facts to demonstrate either (a) that her public disclosures enjoy protection under the

Act or (b) that she was retaliated against *because of* the public disclosures, as is required.  *Id.* at

18-21.

> 1.    Plaintiff Cannot Pursue a WPA Claim Against Defendant Quintana in Her
>       Individual Capacity

Defendants first contend that Plaintiff's WPA claim against Defendant Quintana must be

dismissed because an employee may not sue his or her supervisor individually for alleged

violations of the WPA.  Plaintiff opposes Defendants' motion, arguing that—contrary to

Defendants' contention—the Act should be read to create an implied right of action against

Defendant Quintana because the D.C. Council, in enacting the WPA, declared that its purpose in

doing so was, in part, to "[h]old public employees personally accountable for failure to enforce

the laws and for negligence in the performance of their duties."  Pl.'s Opp'n at 13 (quoting D.C.

Code § 1-615.51(4) (emphasis added by Plaintiff)).

The WPA creates an express right of action for equitable and compensatory damages

---

[9] The WPA defines a "prohibited personnel action" as including, but not limited to, "recommended, threatened, or actual termination, demotion, suspension, or reprimand . . . ."  *Id.* § 1-615.52(a)(5).

against the District.  D.C. Code § 1-615.54(a); *Winder v. Erste*, Civ. A. No. 03-2623, 2005 U.S. Dist. LEXIS 5190, at *20 (D.D.C. March 31, 2005) *rev'd in part on other grounds*, 566 F.3d 209 (D.C. Cir. 2009) (hereinafter "*Winder I*").  In addition, the WPA expressly provides for separate remedies against supervisors in the form of limited disciplinary action.  The relevant provision of the WPA states that, "[u]pon receipt of an adjudicative finding that a protected activity was a contributing factor in an alleged prohibited personnel action, the appropriate agency head shall immediately institute disciplinary action against the offending supervisor."  D.C. Code § 1-615.58(10).

Based upon the above-outlined structure of the WPA, courts in this district have held that the Act does not create a private right of action against individual defendants.  *See, e.g., Winder I*, 2005 U.S. Dist. LEXIS 5190, at *27; *Tabb v. D.C.*, 477 F. Supp. 2d 185, 189 (D.D.C. 2007).  As  Judge John D. Bates concluded in his well-reasoned decision in *Winder I*,

> [t]he structure of the statute strongly indicates that the right of action set forth in § 1-615.54 was intended to run only against the District . . . .  Moreover, the provisions governing disciplinary proceedings against supervisors indicate that the D.C. Council gave consideration to the remedies that should be available against supervisors, and resolved the issue as set forth in D.C. Code § 1-615.58(10) . . . .

2005 U.S. Dist. LEXIS at * 24-25.  Upon its own review of the relevant statutory provisions and case law, the Court agrees with Judge Bates' persuasive analysis in *Winder I* and concludes, for the same reasons, that there is no implied cause of action against individual supervisors under the WPA.  Accordingly, the Defendant's Motion to Dismiss is GRANTED insofar as it seeks dismissal of Plaintiff's WPA claim against Defendant Quintana.[10]

---

[10] As explained above in discussion Plaintiff's Section 1983 claim, it is unclear from Plaintiff's Amended Complaint whether she intended to assert her claims—including Count I—against Defendant Quintana in her individual or official capacity.  The Court, however, concludes that Count I must be dismissed as against Defendant Quintana regardless of whether it

2.      Plaintiff Sufficiently Alleges a Claim Against the District Pursuant to the
        WPA

Defendants next move to dismiss Plaintiff's WPA claim as asserted against the Defendant

District on the grounds that she has not alleged sufficient facts to demonstrate either (a) that she

engaged in "protected disclosures," as that term is defined in D.C. Code § 1-615.52, or (b) that

she was retaliated against *because of* the public disclosures.  The Court shall address each

assertion in turn.

First, construing the Amended Complaint in a light most favorable to the Plaintiff and

accepting as true all reasonable factual inferences therein, the Court finds that—contrary to

Defendants' assertion—Plaintiff has sufficiently alleged that she engaged in protected disclosures

as defined under the Act.  The WPA defines "protected disclosures" as:

> any disclosure of information, not specifically prohibited by statute, by an employee
> to a supervisor or a public body that the employee reasonably believes evidences:
>
> (A)     Gross mismanagement;
>
> (B)     Gross misuse or waste of public resources or funds;
>
> (C)     Abuse of authority in connection with the administration of a public
>         program or the execution of a public contract;
>
> (D)     A violation of a federal, state, or local law, rule, or regulation, or of
>         a term of a contract between the District government and a District
>         government contractor which is not of a merely technical or minimal
>         nature; or
>
> (E)     A substantial and specific danger to the public health and safety.

*Id*. § 1-615.52(a)(6).  For purposes of the WPA, a "public body" includes a member of the D.C.

Council.  *Id*. § 1-615.52(a)(7).

---

is asserted against her in her individual capacity, official capacity, or both, for the reasons set
forth above.

As set forth in her Amended Complaint, Plaintiff specifically alleges that she spoke out against the OUC proposal because she was concerned that the proposed changes "would jeopardize the safety of residents of the District of Columbia" and would "cause emergency calls [to experience] a delay in service."  Am. Compl. ¶¶ 6, 7; *see also id.* ¶ 40 (Plaintiff "sen[t] letters to the city council regarding her concerns for the safety of the residents of the city"); *id.* ¶ 54 (Plaintiff sent emails to various Councilpersons and Mayor Fenty "stating her fear for the safety of the District of Columbia residents if the proposed change occurred").  Plaintiff's allegations are sufficient to suggest that she "reasonably believe[d]" her emails evidenced "[a] substantial and specific danger to the public health and safety."  *See* D.C. Code § 1-615.52(6).  Defendant's arguments to the contrary are without merit.  Accordingly, the Court finds that Plaintiff has alleged facts sufficient to permit the Court to infer, for purposes of Defendants' motion to dismiss, that Plaintiff's disclosures were "protected disclosures" within the meaning of the WPA.

Second, the Court concludes that Plaintiff has also sufficiently alleged that Defendants took an allegedly prohibited personnel action against her *because of* her public disclosures.  To successfully allege a *prima facie* case under the WPA, an employee must demonstrate, *inter alia,* that a protected disclosure was a "contributing factor" in the employer's decision to take an adverse action.  D.C. Code § 1-615.54(b).  *See also Crawford v. D.C.*, 891 A.2d 216, 218-19 (D.C. 2006) (outlining the burden shifting framework of the causation analysis under the WPA).  The WPA defines a "contributing factor" as "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision."  D.C. Code § 1-615.52(a)(2).  In this case, Plaintiff has alleged that, beginning on or around December 14, 2007, she engaged in various protected disclosures expressing her concerns with the OUC proposal to members of the

D.C. Council and Mayor Fenty.  *See Am. Compl.* ¶¶ 7-10, 15, 23.  Plaintiff also alleges that, on

January 10, 2008—only three days after Plaintiff's attempt to speak with the Mayor in person

about the proposed changes—she was placed on administrative leave by Defendant Quintana

because "'the Mayor was not pleased with Ms. Jones' and indicated she was a disgruntle [sic]

and disrespectful employee."  *Id.* ¶ 12.  Based on these allegations, the Court finds that Plaintiff

has sufficiently alleged facts from which it can be reasonably inferred that her attempts to voice

her concerns regarding the OUC proposal contributed, at least in part, to the decision to place her

on administrative leave.  Accordingly, Defendants' [20] Motion to Dismiss is DENIED insofar as

Defendants assert that Count I must be dismissed against the District.

> C.    *Plaintiff's Workers' Compensation Act Retaliation Claim*

Plaintiff next alleges that Defendants retaliated against Plaintiff for attempting to file a

workers' compensation claim in violation of D.C.'s Workers' Compensation Act, D.C. Code §§

32-1501 *et seq.*, as set forth in Count II of Plaintiff's Amended Complaint.  Am. Compl. ¶¶ 58-

66.  According to Plaintiff, Defendant Quintana engaged in various "discriminating actions

against Ms. Jones after she attempted to file a workers' compensation claim," and that such

conduct "was motivated by animus against Ms. Jones in violation of . . . D.C. Code § 32-1542."

*Id.* ¶ 66.  Defendants have moved to dismiss Count II, noting that the anti-retaliatory provisions

of the D.C. Workers' Compensation Act do not apply to Plaintiff, an employee of the District.

Defs.' MTD at 21.  Because Defendants are correct, Plaintiff's claim under the Workers'

Compensation Act must be dismissed.

It is well-settled law that D.C. Code § 32-1542  "does not apply to employees of the

District of Columbia."  *Heasley v. D.C. Gen. Hosp.*, 180 F. Supp. 2d 158, 172-73 (D.D.C. 2002).

Although section 32-1542 prohibits employers and their agents from discharging employees for pursuing workers' compensation claims, the statute excludes from coverage employees of the District government. Specifically, for purposes of Section 32-1542, "employee" is defined to exclude "employee[s] subject to the provisions of subchapter XXIII of Chapter 6 of Title I." D.C. Code § 32-1501(9)(B), which in turn establishes a workers' compensation scheme for employees of the District of Columbia. *See generally* D.C. Code § 1-623.01 *et seq.* (covering every "employee in any branch of the District of Columbia government, including . . . employee[s] of an instrumentality wholly owned by the District of Columbia government").

Plaintiff does not dispute that she was an employee of the District and that this provision applies. Rather, notwithstanding the clear language of the statute, Plaintiff merely asserts without legal support that the anti-retaliatory provision at section 32-1542 applies. Pl.'s Opp'n at 15. As discussed above, this is plainly mistaken.[11] Section 32-1542 does not apply, and Defendants' [20] Motion to Dismiss shall therefore be GRANTED with respect to Count II of Plaintiff's Amended Complaint. Count II is therefore dismissed in its entirety.

### D. Plaintiff's Americans with Disabilities Act Failure to Accommodate Claim

Plaintiff also alleges that Defendants failed to provide Plaintiff with a reasonable accommodation and terminated her from her position with the OUC in violation of the ADA, as set forth in Count IV of Plaintiff's Amended Complaint. Am. Compl. ¶ 73. According to Plaintiff, she was "diagnosed with an impairment/disability for anxiety," *id.* ¶ 24, and was placed on medication for "job related anxiety," *id.* ¶ 46. *See also id.* ¶ 49 (alleging that Plaintiff was

---

[11] Plaintiff also asserts that Defendants are somehow barred by *res judicata* from arguing that D.C. Code § 32-1542 does not apply to D.C. employees because Defendants did not raise the issue at Plaintiff's administrative workers' compensation hearing. *See* Pl.'s Opp'n at 14-15. This argument is illogical and without merit.

found to "be suffering from anxiety depression"). Plaintiff apparently requested that she be permitted to "work 8 hour shifts instead of 10 hour shifts" as a reasonable accommodation for her alleged disability. *Id.* ¶ 24. Defendants, however, denied Plaintiff's request and terminated her from her position at the OUC on July 22, 2008, advising Plaintiff "they could not determine if [she] was suffering from a disability." *Id.* ¶¶ 49, 50.

Defendants have moved to dismiss Plaintiff's failure to accommodate claim, arguing that Plaintiff has failed to sufficiently allege a violation of the ADA. In particular, Defendants contend that Plaintiff has failed to allege sufficient facts to demonstrate that she is disabled within the meaning of the ADA because she has not alleged that her disability substantially limits a major life activity. Defs.' MTD at 15-17. The Court agrees.

The ADA prohibits discrimination on the basis of disability, and defines such discrimination to include, with certain exceptions, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ." 42 U.S.C. § 12112(b)(5)(A). The ADA further defines "disability" as

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1).[12]

_____

[12] As the D.C. Circuit's recently explained, "[o]n September 25, 2008 the Congress enacted the ADA Amendments Act of 2008 (ADAA) in order to 'reinstat[e] a broad scope of protection' under the ADA and to 'reject' the holdings in *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), and *Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)." *Lytes v. D.C. Water and Sewer Auth.*, 572 F.3d 936, 939 (D.C. Cir. 2009) (quoting ADAA § 2(b), Pub.L. No. 110-325, 122 Stat. 3553, 3554). The effective date of the ADAA was delayed until January 1, 2009. *Id.* The D.C. Circuit therefore concluded in *Lytes* that, "[b]y delaying the effective date of the ADAA, the Congress

Plaintiff has not specified, in either her Amended Complaint or her opposition to Defendants' Motion to Dismiss, which of these three disability definitions she alleges applies in this case.  Regardless, all three disability definitions require a showing that the impairment substantially limits a major life activity.  *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008).  In other words, the plaintiff "must show that her alleged impairment is, was, or was believed to be one that 'substantially limits one or more . . . major life activities.'" *Id.*  Plaintiff's Amended Complaint, however, is entirely devoid of any allegation that her alleged "impairment/disability for anxiety" substantially limits any major life activity.  Accordingly, even accepting Plaintiff's allegation as true, she has clearly failed as a matter of law to show that her anxiety "substantially limit[ed]" a major life activity—here, her ability to work.[13]  Although the term "substantially limits" is not defined in the ADA, the Supreme Court has held that

> [w]hen the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs . . . . To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491-92 (1999).  Plaintiff has alleged, at most, only that she was unable to work a 10-hour shift as a dispatcher at the OUC (although she admits she could have worked an 8-hour shift).  *See* Am. Compl. ¶ 24.  As *Sutton* makes clear, in order to

---

clearly indicated the statute would apply only from January 1, 2009 forward." *Id.* at 940. Accordingly, the Court applies the pre-Amendment ADA to Plaintiff's claims in this case.

[13] Because Defendants have not challenged Plaintiff's apparent contention that work constitutes a major life activity, the Court shall assume, without deciding, that work qualifies as a major life activity under the pre-Amendment ADA.  *See Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 n. 1 (D.C. Cir. 2001) (assuming without deciding that work is a major life activity under the ADA).

demonstrate that an alleged impairment substantially limits an individual's ability to work, the individual must prove that he or she is "precluded from more than **one** type of job." *Id.* (emphasis added). Because Plaintiff has not sufficiently alleged facts supporting a reasonable inference that her alleged impairment (*i.e*, anxiety) precluded her from working any other job beside the particular one from which she was terminated, Plaintiff has failed to state a claim under the ADA. Defendants' [20] Motion to Dismiss is therefore GRANTED with respect to Count IV of Plaintiff's Amended Complaint.[14]

### E.     Plaintiff's Claim for Retaliation for Filing an EEO Complaint Claim

Finally, in Count V of Plaintiff's Amended Complaint, Plaintiff asserts that she was fired from the OUC in retaliation for filing a complaint with the OHR in July of 2008, in which she alleged that the OUC discriminated against her in violation of the ADA. Am. Compl. ¶¶ 48, 74-77.[15] Defendants have moved to dismiss Count V, arguing that the claim cannot survive a motion to dismiss because Plaintiff has not identified "under which statutory scheme she seeks to proceed against Defendants" nor has she set forth sufficient "detailed factual support" for this claim. Defs.' MTD at 17-18. Admittedly, Plaintiff's Amended Complaint is not as clear as it could be. However, construing the Amended Complaint in the light most favorable to Plaintiff,

---

[14] Defendants have also argued that Plaintiff's ADA claim is premature as she has failed to exhaust her administrative remedies. *See* Defs.' Reply at 2. Because the Court finds that Plaintiff's ADA claim must be dismissed based upon her failure to sufficiently allege that she has or had a "disability," as that term is statutorily defined, the Court need not reach this argument in the alternative, which the Court notes was raised for the first time in Defendants' Reply.

[15] Although, as previously discussed, Plaintiff has not specified whether she named Defendant Quintana as defendant in her official or individual capacity or both, the Court presumes that Count V is asserted only against the District and not against Defendant Quintana as the law is well settled that "there is no individual liability under . . . the ADA." *See Smith v. Janey*, __ F. Supp. 2d __, 2009 WL 2584821, * (D.D.C. Aug. 24, 2009) (citing *Howard v. Fenty*, 580 Fu. Supp. 2d 86, 92 (D.D.C. 2008); see also *Di Lella v. Univ. of D.C.*, 570 F. Supp. 2d 1, 8 n. 8 (same).

it is reasonable to infer that Plaintiff intended to assert a claim for retaliation in violation of the

ADA, 42 U.S.C. § 12203(a), based upon allegations that she was terminated approximately one

month after she filed a complaint with the OHR on July 22, 2008, in which she alleged that the

OUC had violated the ADA.  Am. Compl. ¶¶ 48, 50, 75-77.  Based on this understanding,[16] the

Court DENIES Defendants' [20] Motion to Dismiss with respect to Count V of the Amended

Complaint to the extent Defendants argue that Plaintiff has failed to sufficiently identify the legal

or factual basis for this claim.[17]

## IV. CONCLUSION

For the foregoing reasons, the Court shall Court shall GRANT IN-PART and DENY IN-

PART Defendants' [20] Motion to Dismiss as follows:

---

[16] Plaintiff, in her opposition to Defendants' Motion to Dismiss, appears to contend that her claim for retaliation in violation of the ADA, as asserted in Count V of her Amended Complaint, is based on Defendants' refusal to give her a workers' compensation claim number or to permit her to use annual leave instead of sick leave as well as the decision to serve her with a 30-day suspension (which was later dismissed).  See Pl.'s Opp'n at 12.  The Court is baffled by these assertions, given that these alleged events occurred *prior to* July 2008—*i.e.*, before Plaintiff filed a complaint with the OHR on July 22, 2008.  Am. Compl. ¶ 48.  As such, these allegations clearly do not support a claim of retaliation for filing the complaint with the OHR.  Moreover, the Court notes that these particular factual allegations are not included as a basis for Count V, as set forth in Plaintiff's Amended Complaint.

[17] Defendants have argued for the first time in their Reply that Count V of Plaintiff's Amended Complaint must also be dismissed because Plaintiff has failed to exhaust her administrative remedies.  See Defs.' Reply at 7.  Defendants contend that, although Plaintiff alleges she filed a EEO charge on July 22, 2008, she has not indicated whether she received a right to sue letter or that the OHR has otherwise disposed of her claim.  *Id.*  The Court notes that the exhaustion requirements under the ADA are not jurisdictional.  *See Johnson v. D.C.*, 572 F. Supp. 2d 94, 102 (D.D.C. 2009).  Accordingly, as Defendants did not raise this argument in their opening motion, the Court declines to consider it at this time.  *See McBride v. Merrell Dow & Pharm.,* 800 F.2d 1208, 1211 (D.C. Cir.1986) ("[c]onsidering an argument advanced for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered") (internal citations omitted).  *See also Am. Wildlands v. Kempthorne,* No. 07-5179, 2008 WL 2651091, at *8 (D.C. Cir. July 8, 2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in their reply brief.").

(1)     With respect to Count I, Defendants' motion is GRANTED insofar as Defendants contend that Count I must be dismissed as against Defendant Quintana, but is DENIED insofar as Defendants contend that Count I must be dismissed as against the District;

(2)     With respect to Count II, Defendants' motion is GRANTED, and Count II is dismissed in its entirety;

(3)     With respect to Count III, Defendants' motion is

    (a)     DENIED insofar as Defendants assert that Plaintiff has failed to sufficiently allege that she spoke out as a private citizen;

    (b)     GRANTED insofar as Defendants contend that Plaintiff's Section 1983 claim against Defendant Quintana in her official capacity should be dismissed as redundant;

    (c)     DENIED WITHOUT PREJUDICE insofar as Defendants aasert that Defendant Quintana is entitled to qualified immunity; and

    (D)     GRANTED insofar as Defendants seek to dismiss Plaintiff's Section 1983 claim against the District;

(4)     With respect to Count IV, Defendants' motion is GRANTED, and Count IV is dismissed in its entirety; and

(5)     With respect to Count V, Defendants' motion is DENIED.

In addition, to the extent Plaintiff intends to allege her Section 1983 claim against Defendant Quintana in her individual capacity, Plaintiff must amend her complaint, by no later than **October 16, 2009**, to specify that Defendant Quintana is being sued in her individual capacity and to allege facts sufficient to support her claim that Defendant Quintana should be held personally liable.  If Plaintiff declines to do so, the Court shall treat her failure to timely amend as a concession that she does not seek to assert her Section 1983 claim against Defendant Quintana in her individual capacity.  Plaintiff is further advised that if she chooses to amend her complaint, she may amend only to further clarify her Section 1983 claim with respect to

Defendant Quintana in her individual capacity and to remove those claims the Court has

dismissed in this Memorandum Opinion and Order; Plaintiff may not otherwise amend her

complaint absent either Defendants' or this Court's consent, pursuant to Federal Rule of Civil

Procedure 15(a).  In the event Plaintiff does amend her complaint to specify that her Section

1983 claim is asserted against Defendant Quintana in her individual capacity, the Court shall

permit Defendant Quintana an opportunity to file a renewed motion with respect to her claim of

qualified immunity, if she deems it appropriate.  An appropriate Order accompanies this

Memorandum Opinion.

Date:   September 30, 2009

                                    _____*/s/*_____
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge