## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALEXANDRIA JONES,

      Plaintiff,

v.

JANICE QUINTANA, *et al.*,

      Defendants.

Civil Action No. 08-00620 (CKK)

## MEMORANDUM OPINION
(December 19, 2011)

Plaintiff Alexandria Jones ("Jones"), a former employee of the District of Columbia's

Office of Unified Communications, brings this action against the District of Columbia (the

"District") and Janice Quintana ("Quintana"), the former Director of the Office of Unified

Communications, who is now sued in this action solely in her personal capacity.  Currently

before the Court is Quintana's [58] Motion to Dismiss Plaintiff's Third Amended Complaint

("Motion to Dismiss"), through which Quintana seeks the dismissal of Jones' claim against her

under 42 U.S.C. § 1983 ("Section 1983"), contending that she is entitled to qualified immunity.

Upon careful consideration of the parties' submissions, the relevant authorities, and the record as

a whole, the Court shall DENY Quintana's [58] Motion to Dismiss.

## I.  BACKGROUND

The Court assumes familiarity with its prior opinions in this action, which set forth in

detail the history of the case.  *See, e.g.*, *Jones v. Quintana* ("*Jones₁*"), 658 F. Supp. 2d 183

(D.D.C. 2009); *Jones v. Quintana* ("*Jones₂*"), 665 F. Supp. 2d 1 (D.D.C. 2009).

A.      *Factual Background*

Jones began her employment with the District in August 1998.  Third Am. Compl., ECF

No. [57], ¶ 2.[1]  Six months later, she was promoted to a dispatcher position in the District's

Office of Unified Communications, where her duties involved handling emergency "911 calls"

and transmitting information to the necessary response teams.  *Id.* ¶ 3.

At some unidentified point prior to December 14, 2007, Jones learned that Quintana, who

was then the Director of the Office of Unified Communications, was proposing changes to the

manner in which emergency "911 calls" and non-emergency "311 calls" would be routed to

dispatchers.  *Id.* ¶ 5.  When Jones first started her work as a dispatcher with the Office of Unified

Communications, non-emergency "311 calls" were handled by untrained and uncertified

operators, allowing trained and certified dispatchers like Jones to focus their attention on

emergency "911 calls."  *Id.* ¶ 4.  Quintana's proposed changes, however, would adopt a new

practice of routing non-emergency "311 calls" to the emergency "911 line," something that Jones

believed would have the effect of delaying emergency response times.  *Id.* ¶¶ 5-6.  According to

Jones, the Office of Unified Communications did not have a sufficient number of trained and

certified dispatchers to cover the universe of combined phone calls.  *Id.* ¶ 6.

Beginning in late 2007 and continuing into early 2008, Jones attempted to raise her

concerns regarding the proposed changes with members of the District of Columbia Council,

then-Mayor Adrian Fenty, and the public.  *Id.* ¶¶ 7-10, 14, 20.  On December 14 and 17, 2007,

she sent e-mails to members of the District of Columbia Council contending that Quintana's

---

[1]  This factual background is derived from the well-pleaded factual allegations in the
Third Amended Complaint and focuses on those allegations most relevant to the pending Motion
to Dismiss and Jones' Section 1983 claim against Quintana in her personal capacity (**Count III**).

proposed changes would "jeopardize the safety of residents of the District of Columbia." *Id.* ¶¶
7-8. On December 28, 2007 and January 1, 2008, Jones sent e-mails to then-Mayor Fenty raising
the same concerns and requesting a meeting with him to discuss those concerns further. *Id.* ¶¶ 9-
10.

On January 7, 2008, Jones attempted to have an in-person conversation with then-Mayor
Fenty when he visited the District's Office of Unified Communications. *Id.* ¶ 11. The encounter
did not go well. Although Jones claims she was neither rude nor disrespectful, she alleges that
then-Mayor Fenty raised his voice at her and "screamed" that she should "do whatever Ms.
Quintana wanted her to do." *Id.*

On January 10, 2008, Quintana placed Jones on administrative leave with pay. *Id.* ¶ 12.
By that point in time, Quintana was aware of Jones' efforts to "speak out" about the changes
Quintana was proposing to the routing of emergency and non-emergency calls in the Office of
Unified Communications. *Id.* Nonetheless, Quintana justified the decision to place Jones on
administrative leave by stating that then-Mayor Fenty was "not pleased" with Jones and by
characterizing Jones as a "disgruntled and disrespectful employee." *Id.*

On January 11, 2008, Jones participated in an interview with a local television station,
voicing her concerns about Quintana's proposed changes to the routing of emergency and non-
emergency calls. *Id.* ¶ 14. It is unclear whether the interview was ever aired.

On January 18, 2008, Quintana proposed that Jones be suspended for thirty days. *Id.* ¶
18. While it is never made clear, it appears that the contemporaneous justification for the
proposed suspension coincided with Quintana's stated reasons for placing Jones on
administrative leave approximately one week prior—namely, that then-Mayor Fenty was "not

pleased" with Jones and that Jones was a "disgruntled and disrespectful employee." *Id.* ¶ 12.

On January 24, 2008, Jones testified before the District of Columbia Council. *Id.* ¶ 20. In her testimony, Jones addressed what she believed was the "lowered safety level" for District of Columbia residents that would purportedly result from Quintana's proposed changes to the routing of emergency and non-emergency calls in the Office of Unified Communications. *Id.* ¶ 20.

On February 11, 2008, for reasons that are left unstated, Jones' proposed thirty-day suspension was overruled and the "charges" against her were "dismissed without prejudice." *Id.* ¶ 23. It appears that Jones subsequently took leave from work for an unspecified period of time in connection with what she claims was job-related anxiety. *Id.* ¶¶ 36, 39.

On July 22, 2008, Jones filed a formal complaint with the District's Office of Human Rights challenging her treatment at the Office of Unified Communications. *Id.* ¶ 40. Shortly thereafter, her employment was terminated. *Id.* ¶ 43.

B.    *Procedural Background*

When Jones first brought this action on April 10, 2008, prior to the termination of her employment, she asserted three overarching claims against the District and Quintana:

- **Count I:** Retaliation in violation of the District of Columbia Whistleblower Protection Act (the "DC-WPA"), D.C. CODE § 1-615.51 *et seq.*;

- **Count II:** Retaliation in violation of the District of Columbia Workers' Compensation Statute (the "DC-WCS"), D.C. CODE § 31-1501 *et seq.*; and

- **Count III:** Deprivation of rights under the First Amendment to the United States Constitution in violation of Section 1983.

4

*See* Compl., ECF No. [1].  These three original claims are based on events that allegedly transpired between December 2007 and the commencement of this action.  Meanwhile, on January 2, 2009, Jones filed an Amended Complaint to assert two additional claims based on events allegedly transpiring in the time since she commenced the action:

- **Count IV:**  Failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.*; and

- **Count V:**  Retaliation in violation of the ADA.

*See* Am. Compl., ECF No. [19].

Subsequently, the District and Quintana moved to dismiss Jones' Amended Complaint. On September 30, 2009, the Court granted the motion in part and denied it in part.  Specifically:

- **Count I:**  Jones' retaliation claim under the DC-WPA was dismissed against Quintana but survived against the District;

- **Count II:**  Jones' retaliation claim under the DC-WCS was dismissed in its entirety;

- **Count III:**  Jones' Section 1983 claim was dismissed against the District and Quintana insofar as Quintana was being sued in her official capacity;

- **Count IV:**  Jones' failure-to-accommodate claim under the ADA was dismissed in its entirety; and

- **Count V:**  Jones' retaliation claim under the ADA survived in its entirety.

*See Jones₁*, 658 F. Supp. 2d at 204.  As a result, only two of Jones' claims clearly survived the motion to dismiss:

- •   **Count I:**  Jones' retaliation claim against the District under the DC-WPA; and

- •   **Count V:**  Jones' retaliation claim against the District under the ADA.

*See id.*  Meanwhile, as to Jones' Section 1983 claim (**Count III**), the Court observed that Jones'

Amended Complaint did not clearly indicate which factual allegations she was relying upon in

bringing suit against Quintana in her personal capacity.  *See id.* at 196.  Concluding that it would

be unfair to require Quintana to advance a claim of qualified immunity without fair notice of the

precise factual allegations asserted against her in her personal capacity, the Court directed Jones

to amend her Complaint a second time to identify those factual allegations.  *See id.* at 196, 204.

Responding to the Court's directive, Jones' then-counsel, Jerome E. Clair, Esq., filed a

Second Amended Complaint.  *See* Second Am. Compl., ECF No. [32].  However, the Second

Amended Complaint inexplicably included a single count—Jones' Section 1983 claim (**Count

III**)—and made no reference to Jones' surviving retaliation claim against the District under the

DC-WPA (**Count I**) or her retaliation claim against the District under the ADA (**Count V**).  In

an effort to clarify whether Jones intended to abandon these latter two claims, the Court warned

Jones that she would be required to file an amended pleading setting forth all her legal claims in

a single document.  *See* Min. Order (Oct. 5, 2009).

Despite this warning, Jones' then-counsel failed to file a timely amended pleading in

accordance with the Court's instructions.  Meanwhile, since Jones' Section 1983 claim (**Count

III**) still appeared in the most recent iteration of the Complaint, the Court granted the District and

Quintana leave to file a second motion to dismiss addressing that claim.  *See id.*  The District and

Quintana did so, confining their arguments to Jones' Section 1983 claim (**Count III**), assuming

that Jones had abandoned her remaining claims.

Upon reviewing the second motion to dismiss, the Court again alerted Jones of her failure to incorporate legal claims in her Second Amended Complaint and cautioned her that the Court would assume she intended to abandon any unidentified claims.  *See* Min. Order (Oct. 23, 2009).  Jones' then-counsel responded by filing a Status Report with the Court, stating without further explanation that Jones did "not intend to relitigate any issue that was decided by the court" in resolving the first motion to dismiss and did "not intend to file any response to defendants' motion to dismiss plaintiff's second amended complaint."  Pl.'s Status Report, ECF No. [35].  Based on this response, the Court concluded that Jones had abandoned any claims apart from her Section 1983 claim (**Count III**) and that she had, further, conceded the merits of the motion to dismiss that claim by failing to file a timely opposition.  *See Jones₂*, 665 F. Supp. 2d at 4-5.  With no viable claims left extant, the Court dismissed the action in its entirety.  *See id.* at 5.

Shortly thereafter, Jones' then-counsel filed a document styled as a "motion for clarification."  *See* Pl.'s Mot. for Clarification, ECF No. [38].  In the one-page document, Jones' then-counsel first asserted that "[i]n less than 90 days after his inauguration President Obama has restructured the American automobile industry," and then proceeded to query when the Court would refer this case to a magistrate judge for a settlement conference.  *See id.*  In response, the Court referred Jones' then-counsel to its prior memorandum opinion and order dismissing the case in its entirety.  *See* Min. Order (Oct. 30, 2009).

This prompted Jones' then-counsel to file a notice of appeal.  *See* Pl.'s Notice of Appeal, ECF No. [39].  After Jones learned of the appeal and secured new counsel, the United States Court of Appeals for the District of Columbia Circuit held the appeal in abeyance in order to afford Jones an opportunity to seek relief from this Court.  Jones, represented by new counsel,

7

then filed a motion for reconsideration with this Court, submitting a sworn declaration outlining

her interactions with her former counsel and submitting a proposed Third Amended Complaint

speaking to the concerns identified earlier by the Court.  Based on the unique circumstances

presented, the Court granted the motion for reconsideration, instructing Jones to file her Third

Amended Complaint.  *See* Mem. Op., Order, & Indicative Ruling (Mar. 27, 2011), ECF No. [49];

Am. Order (May 8, 2011), ECF No. [52].

Today, the operative iteration of the Complaint is Jones' Third Amended Complaint.  *See*

Third Am. Compl., ECF No. [57].  Therein, Jones asserts three "live" claims:

- **Count I:**  Retaliation under the DC-WPA against the District;

- **Count III:**  Deprivation of rights under the First Amendment to the United States
  Constitution in violation of Section 1983 against Quintana in her personal
  capacity; and

- **Count V:**  Retaliation under the ADA against the District.

Am. Order (May 8, 2011), ECF No. [52].  Only the second of these claims—Jones' Section 1983

claim against Quintana in her personal capacity (**Count III**)—is presently at issue.

In light of the intervening developments in the action, the Court afforded Quintana an

opportunity to file the pending Motion to Dismiss directed to Jones' Section 1983 claim (**Count**

**III**) based on the doctrine of qualified immunity.  The parties briefed the motion in accordance

with the schedule set by the Court.  *See* Mem. of P. & A. Supporting Def. Janice Quintana's Mot.

to Dismiss ("Def.'s Mem."), ECF No. [58]; Pl. Jones [sic] Opp'n to Def.'s Mot. to Dismiss Def.

Quintana ("Pl.'s Opp'n"), ECF No. [61]; Def. Janice Quintana's Reply to Pl.'s Opp'n to Mot. to

Dismiss ("Def.'s Reply"), ECF No. [62].[2]  The motion is now fully briefed and ripe for a

decision.  In an exercise of its discretion, the Court finds that holding oral argument on the

motion would not be of assistance in rendering a decision.  *See* LCvR 7(f).

## II.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. (8)(a), "in

order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)).  Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a

complaint on the ground that it "fail[s] to state a claim upon which relief can be granted."  FED.

R. CIV. P. 12(b)(6).  When presented with a motion to dismiss for failure to state a claim, the

district court must accept as true the well-pleaded factual allegations contained in the complaint.

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, __ U.S. __,

130 S. Ct. 2064 (2010).  Although "detailed factual allegations" are not necessary to withstand a

Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff

must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a

cause of action."  *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.

Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).  Rather, a complaint must contain

sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on

---

[2]  Because Quintana's submissions are not paginated, the Court shall refer to the page numbers generated by the Court's CM/ECF System.

9

its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  The plaintiff must provide more than just

"a sheer possibility that a defendant has acted unlawfully." *Id.* at 1950.  When a complaint's

well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common

sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that

the pleader is entitled to relief. *Id.*

## III. DISCUSSION

In her [58] Motion to Dismiss, Quintana contends that she is entitled to qualified

immunity from Jones' Section 1983 claim (**Count III**).[3]  Through that claim, Jones alleges that

Quintana, in her personal capacity, ran afoul of the First Amendment of the United States

Constitution by (1) placing Jones on administrative leave without pay, (2) proposing that Jones

be suspended for thirty days, and (3) terminating Jones' employment.  Third Am. Compl. ¶ 51.

Jones contends that each of these three employment actions was taken in retaliation for her

efforts to communicate her concerns about the public-safety impact of Quintana's proposed

changes to the routing of emergency and non-emergency calls at the Office of Unified

Communications to the District of Columbia Council, then-Mayor Fenty, and the public.[4]  *Id.* ¶¶

---

[3]  The claim is the only one asserted against Quintana that remains viable in this action.
*See* Am. Order (May 8, 2011), ECF No. [52].  The other claims that remain "live"—Jones'
retaliation claim under the DC-WPA (**Count I**) and her retaliation claim under the ADA (**Count
V**)—are asserted against the District alone.  *See id.*

[4]  In a footnote in her moving papers, Quintana suggests, in passing and with no
meaningful explication, that Jones' proposed thirty-day suspension and subsequent termination
are "admittedly unrelated" to her allegedly protected speech.  Def.'s Mem. at 8 n.4.  The
suggestion is, quite frankly, perplexing.  In her Third Amended Complaint, Jones unambiguously

7, 10-14, 51.

Quintana's [58] Motion to Dismiss rests on the doctrine of qualified immunity, which "shields federal and state officials from suit unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For the reasons set forth below, the Court finds that resolution of the question of whether Quintana is entitled to qualified immunity must await further development of the factual record. Accordingly, her [58] Motion to Dismiss shall be DENIED.

A.   *Jones Has Alleged a Plausible Constitutional Violation*

The Court begins with the first prong of the qualified immunity analysis, which asks whether the plaintiff has "allege[d] facts showing . . . that the official violated a statutory or constitutional right." *Al-Kidd*, 131 S. Ct. at 2080. Here, Jones' Section 1983 claim turns on her contention that Quintana ran afoul of the First Amendment by taking adverse employment actions against her in retaliation for her efforts to communicate her concerns about the public-safety impact of Quintana's proposed changes to the routing of emergency and non-emergency

---

alleges that both these acts "constituted violations" of her rights under the First Amendment and, in turn, contravened Section 1983. Third Am. Compl. ¶ 51; *see also* Pl.'s Opp'n at 6 (contending that Jones' proposed suspension and termination were retaliatory). To the extent Quintana intended to argue that Jones' allegedly protected speech and these employment actions are "unrelated" in the sense that Jones has failed to adduce sufficient factual allegations to permit a trier of fact to infer a causal connection, she has failed to support that argument with any meaningful measure of factual or legal argument. *Cf. Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (*en banc*) ("We need not consider cursory arguments made only in a footnote."). The Court declines to reach the issue in the absence of adequate briefing from the parties.

calls at the Office of Unified Communications to the District of Columbia Council, then-Mayor Fenty, and the public.

The legal principles governing First Amendment retaliation claims by public employees are well-settled.  On the one hand, individuals do not "relinquish the First Amendment rights they would otherwise enjoy as citizens" simply by accepting public employment.  *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968).  On the other hand, public employers have a special interest in supervising their employees and, for this reason, an individual "must accept certain limitations on his or her freedom" when he or she accepts public employment.  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  Courts have developed an accepted framework for approaching the sometimes difficult task of reconciling an employee's right to engage in speech with a public employer's substantial interest in ensuring that its operations are efficient and effective.  The United States Supreme Court recently summarized that framework in the following manner:

> When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern.  *Connick v. Myers*, 461 U.S. 138, 147 (1983).  If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Id.*  Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged.  Courts balance the First Amendment interest of the employee against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering*, 391 U.S. at 568.

*Borough of Duryea, Pa. v. Guarnieri*, __ U.S. __, 131 S. Ct. 2488, 2493 (2011).  To balance the competing interests at play, the court "must consider whether the government interest in

promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern." *Bowie v. Maddox*, 642 F.3d 1122, 1133 (D.C. Cir. 2011) (quoting *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007)).  In addition, "the employee must show that his speech was a substantial or motivating factor in prompting the retaliatory or punitive act." *Id.* (quoting *Wilburn*, 480 F.3d at 1149) (notations omitted).  Finally, "the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of protected speech." *Id.* (quoting *Wilburn*, 480 F.3d at 1149).  Factors bearing on whether the employee's speech is constitutionally protected are questions of law for the court to decide, while factors bearing on whether that speech was a cause of an adverse employment action are questions of fact for the jury. *Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994).

In her Motion to Dismiss, Quintana hardly touches upon these principles.  When she does, her recitation of the applicable legal framework is woefully incomplete.  It is therefore unsurprising that the arguments that Quintana has tendered in favor of dismissal are disjointed, poorly articulated, and untethered to concrete legal authority.[5]  The Court addresses each

---

[5]  Quintana is not alone in this regard.  From their submissions, it is pellucidly clear that *neither* party dedicated adequate time and attention to this matter.  Setting aside the fact that the parties' papers are replete with typographical errors, both sides' submissions frequently devolve into a discussion of factual matters and legal principles that plainly have no bearing on this case.  Simply by way of example, Quintana offers an extended discussion of an authority addressing the contours of municipal liability under Section 1983, which has no relevance to Jones' claims against Quintana in her personal capacity.  *See* Def.'s Reply at 2.  Meanwhile, Jones dutifully describes the legal vehicle for securing money damages against federal officials, even though there is no dispute that Quintana was, at all times relevant to this action, an official of the District.  *See* Pl.'s Opp'n at 5.  The Court shall not belabor the point.  Going forward, the parties are expected to allocate whatever time and attention is necessary to craft coherent and targeted papers that crystallize the pertinent factual and legal issues for the Court's consideration.

argument in turn.

First, Quintana faults Jones for failing to allege that Quintana was "aware" of Jones' allegedly protected speech. Def.'s Mem. at 8. Although Quintana never articulates how her argument relates to the legal framework governing First Amendment retaliation claims, her argument is presumably that, absent Quintana having knowledge of Jones' protected speech, there is no basis for a trier of fact to conclude that the speech was "a substantial or motivating factor" in the challenged employment actions, *Bowie*, 642 F.3d at 1133 (quoting *Wilburn*, 480 F.3d at 1149)—her placement on administrative leave, her proposed thirty-day suspension, and her termination. *See Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (suggesting that, "for protected conduct to be a substantial or motiving [sic] factor in a decision, the decisionmakers must be aware of the protected conduct"). Assuming, for the sake of argument, the validity of this argument in the abstract, it has no bearing here for the simple reason that, contrary to what Quintana has argued in her Motion to Dismiss, Jones *has* alleged that Quintana had knowledge of the speech at issue. In the Third Amended Complaint, Jones specifically alleges that by the time Quintana placed Jones on administrative leave—the first in time of the three challenged employment actions—Quintana "was aware of the efforts by Ms. Jones to speak out publically regarding the proposed changes to the 911 system." Third Am. Compl. ¶ 12. Such an allegation is also implicit in Jones' repeated assertions that Quintana's conduct was an "intentional" effort to "prevent Ms. Jones from exercising her First Amendment rights to talk to the media and the city council." *Id.* ¶ 52. At this early stage, Jones' allegations suffice to charge Quintana with knowledge of Jones' allegedly protected speech. *See* FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged

14

generally.").

Second, so far as the Court can tell, Quintana faults Jones for failing to allege that her protected communications were made directly to Quintana, as opposed to third-parties. *See* Def.'s Mem. at 4 n.2 ("[T]here are no . . . allegations that Plaintiff expressed her concerns directly to Director Quintana."); Def.'s Reply at 3 ("Plaintiff does not contend that she sent any 'protected communication' to Defendant Quintana."). To the extent such an argument was intended, it is without merit. The law does not require an employee's speech to be directed to the public employer, or the decisionmaker, in order to be deemed protected. *See, e.g.*, *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16 (1979) (observing that a public employee may enjoy First Amendment protection for both private communications with his or her employer and speech "spread . . . before the public").

Third, Quintana faults Jones for failing to specify the precise content of what she communicated to then-Mayor Fenty when he visited the Office of Unified Communications on January 7, 2008. *See* Def.'s Mem. at 8-9. Quintana argues that "[a]bsent some specifically identified speech for which she allegedly suffered retaliation, Plaintiff's claim fails as a matter of law." *Id.* at 9. Once again, Quintana never bothers to explain in a cogent manner why Jones' claim "fails as a matter of law," but the Court presumes that the argument is that Jones has failed to allege facts showing that "she spoke as a citizen on a matter of public concern," *Guarnieri*, 131 S. Ct. at 2493 (citing *Connick*, 461 U.S. at 147), or that the speech was "a substantial or motivating factor" in the challenged employment actions, *Bowie*, 642 F.3d at 1133 (quoting *Wilburn*, 480 F.3d at 1149). In either case, the argument is a strawman. Jones concedes that she did not raise her concerns about Quintana's proposed changes to the routing of emergency and

15

non-emergency calls during her in-person encounter with then-Mayor Fenty on January 7, 2008

and, consistent with this concession, she disclaims any argument that the encounter involved

protected speech.  *See* Pl.'s Opp'n at 5-6 ("Plaintiff did not allege that her conversation on

January 7, 2008, with Mayor Fenty contained information about the faulty new 911 system and

therefore that entire incident is not evidence to support Ms. Jones.").[6]  Instead, Jones claims that

the protected speech underlying her claim came earlier, in the form of the e-mails she sent to

members of the District of Columbia Council and then-Mayor Fenty, as well as later, in

connection with her participation in an interview with a local television station.  *See* Third Am.

Compl. ¶¶ 7, 10-14, 51; Pl.'s Opp'n at 5-6.  For this reason, the lack of communicative content to

Jones' in-person encounter with then-Mayor Fenty on January 7, 2008 raises no bar to her claim.

Rather, Jones may proceed on the theory that her e-mail communications with members of the

District of Columbia Council and then-Mayor Fenty, as well her participation in an interview

with a local television station, constituted protected speech that was a "substantial or motivating

factor" in her placement on administrative leave, proposed thirty-day suspension, and

termination.[7]

---

[6]  Elsewhere, Jones argues that then-Mayor Fenty "knew or should have known what the conversation she wanted to have with him [in person on January 7, 2008] was about."  Pl.'s Opp'n at 6.  It is unclear what relevance, if any, Jones believes this has to her Section 1983 claim, which is asserted against Quintana in her personal capacity.  It may be that Jones intends to somehow use then-Mayor Fenty's knowledge of her protected speech in order to establish a causal connection between her protected speech and the challenged employment actions, but it is by no means clear from the face of Jones' submissions.

[7]  The last of these events, Jones' participation in an interview with a local television station, occurred after Quintana placed Jones on administrative leave, meaning it is only relevant insofar as it pertains to the other two employment actions challenged by Jones—namely, her proposed thirty-day suspension and subsequent termination.

Fourth, although it is not altogether clear, Quintana appears to argue that Jones' allegations are insufficient to show that she was speaking as a "private citizen" and not as an employee. *See* Def.'s Reply at 4. However, Quintana first raised this argument in her reply and, in an exercise of its discretion, the Court declines to consider it here. *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 (D.D.C. 2007) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court [may] either ignore those arguments . . . or provide the non-movant an opportunity to respond."), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008). In any event, Quintana seems to forget that the Court has already addressed this issue. Presented with identical factual allegations, the Court found that Jones' allegations are sufficient to suggest that "she was speaking as a private citizen and not pursuant to her official duties." *Jones₁*, 658 F. Supp. 2d at 193. That observation, made in the context of resolving the District and Quintana's first motion to dismiss, holds no less true today.

Fifth, while it is again not altogether clear, Quintana also appears to argue that Jones has failed to show that her alleged speech related to "a matter of public concern." Def.'s Reply at 2; *see also id.* at 4 (arguing that Jones' communications were about "advancing [her] interest in conversing with the Mayor, not promoting a cause"). The Court similarly declines to reach this argument because it was raised for the first time in Quintana's reply. Regardless, even assuming that the Court were inclined to reach the issue, Jones' allegations that her speech addressed the public-safety impact of Quintana's proposed changes, and the purported deleterious effect they would have on the emergency response services provided to District of Columbia residents, are more than sufficient at this stage of the proceedings. *See LeFande v. District of Columbia*, 613 F.3d 1155, 1159 (D.C. Cir. 2010) ("[S]peech relates to a matter of public concern if it is of

17

political, social, or some other concern to the community.") (quotation marks, notations, and citation omitted).

Finally, phrasing the argument in a variety of ways, Quintana contends that Jones has failed to show that her placement on administrative leave[8] was taken in retaliation for her protected speech.  *See* Def.'s Mem. at 8-10; Def.'s Reply at 2-3.  In other words, she argues that there is no factual basis to conclude that the speech was "a substantial or motivating factor" in Jones' placement on administrative leave.  *Bowie*, 642 F.3d at 1133 (quoting *Wilburn*, 480 F.3d at 1149).  To get to her desired end-point, Quintana fundamentally misconstrues or ignores the well-pleaded allegations in the Third Amended Complaint,[9] and then proceeds to offer her own account of what transpired.  According to Quintana, her "decision to place [Jones] on administrative leave arose from the personal differences exhibited between [Jones] and Mayor Fenty on January 7, 2008."  Def.'s Reply at 2.  While that may or may not turn out to be true after the parties have had the opportunity to engage in discovery, the simple and unavoidable fact is that Jones has alleged otherwise.  If Jones' allegations are to be believed, and at this stage they

---

[8]  Quintana's singular focus on Jones' placement on administrative leave is a function of her misguided assumption that Jones has admitted that her proposed thirty-day suspension and termination are "unrelated" to her allegedly protected speech.  Def.'s Mem. at 8 n.4.  As aforementioned, the Court rejects that assumption.

[9]  Among other things, Quintana reads the Third Amended Complaint as alleging that Quintana placed Jones on administrative leave *because* then-Mayor Fenty was "not pleased" with her and characterized her as a "disgruntled and disrespectful employee."  Def.'s Mem. at 4 (quotation marks and citation omitted).  To the contrary, Jones alleges that this was Quintana's stated (and, by clear implication, pre-textual) justification for acting as she did.  *See* Third Am. Compl. ¶ 12.

must be,[10] Quintana knowingly and intentionally placed Jones on administrative leave because

Jones had attempted to raise her public-safety concerns about Quintana's own policies with the

District of Columbia Council, then-Mayor Fenty, and the media.  This account is more than

adequately supported by the full panoply of factual allegations in the Third Amended Complaint,

including the allegation that Quintana was both the decisionmaker and the target of Jones'

alleged criticisms and the close temporal proximity between the alleged speech and Jones'

placement on administrative leave (a matter of days).

　　　In the final analysis, Quintana's arguments are patently inadequate to permit this Court to

conclude that Jones has failed to allege a plausible claim that Quintana violated the First

Amendment by taking adverse employment actions against Jones for her allegedly protected

speech.  Accordingly, the Court now turns its attention to the second prong of the qualified

immunity analysis.

　　　B.　　The Contours of the Right Were "Clearly Established"

　　　Under the second prong of the qualified immunity analysis, the question is whether the

relevant "right was 'clearly established' at the time of the challenged conduct."  *Al-Kidd*, 131 S.

Ct. at 2080 (quoting *Harlow*, 457 U.S. at 818).  "[C]onduct violates clearly established law

---

[10]  In tendering this argument, Quintana consistently ignores the applicable standard of review, intimating that this Court should adopt a heightened standard of review by "scrutinizing" Jones' factual allegations and finding that they reflect nothing more than a "garden-variety" case of "insubordination."  Def.'s Reply at 3.  However, when presented with "a motion to dismiss on the basis of qualified immunity," the district court is still "required to assume the truth of all factual allegations in the complaint."  *Navab-Safavi v. Glassman*, 637 F.3d 311, 318 (D.C. Cir. 2011) (citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (observing that the district court takes "the facts that the plaintiff has alleged" when deciding whether she has asserted a violation of a constitutional right) (citing FED. R. CIV. P. 12(b)(6), (c)).

when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable officer would have understood that what he is doing violates that right." *Id.* at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (quotation marks and notations omitted).

Strangely, Quintana seems to think that her arguments are focused on this aspect of the qualified immunity analysis. *See* Def.'s Mem. at 7 n.3. However, virtually all of her arguments go to the question of whether Jones has alleged a plausible constitutional violation and, as a result, are more appropriately analyzed under the rubric of the first prong of the qualified immunity analysis. *See supra* Part III.A.

The one possible exception to this observation is Quintana's argument that she is entitled to qualified immunity because "[t]he allegations in the Third Amended Complaint support [her] good faith belief that [Jones] committed a job-related violation of agency rules." Def.'s Mem. at 9. However, like Quintana's argument that Jones has failed to show that her placement on administrative leave was taken in retaliation for her protected speech, this argument rests upon a fundamental misconstruction of the well-pleaded allegations in the Third Amendment Complaint and requires the Court to accept Quintana's competing version of the alleged events. If Jones' allegations are to be believed, and, again, at this stage they must be, Quintana knowingly and intentionally placed Jones on administrative leave, proposed her thirty-day suspension, and terminated her employment because Jones had attempted to raise her public-safety concerns about Quintana's own policies with the District of Columbia Council, then-Mayor Fenty, and the media. Under the legal precedent existing at the time of the first challenged employment action in January 2008, any reasonable government official would have been on notice that such

conduct, as it has been alleged by Jones, was "clearly unlawful." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  By that point in time, the general principles governing First Amendment retaliation claims had been so fully articulated and repeatedly applied to analogous employment disputes to put the constitutional question "beyond debate."  *Al-Kidd*, 131 S. Ct. at 2083.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that resolution of the question of whether Quintana is entitled to qualified immunity must await further development of the factual record. Accordingly, her [58] Motion to Dismiss shall be DENIED.  An appropriate Order accompanies this Memorandum Opinion.

Date:   December 19, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge